734 F.2d 538
 Alvin Bernard FORD, Petitioner-Appellant,
v.
Charles G. STRICKLAND, Jr., Warden, Florida State
Penitentiary, Louie L. Wainwright, Secty., Dept.
of Offender Rehabilitation, Florida, and
Jim Smith, Atty. Gen.,
Florida,
Respondents-
Appellees.
Alvin Bernard FORD, or Connie Ford, individually, and acting
as next friend on behalf of Alvin Bernard Ford,
Petitioners-Appellants,
v.
Louie L. WAINWRIGHT, Secretary, Department of Corrections,
State of Florida, Respondent-Appellee.
 Nos. 84-5293, 84-5372.
 United States Court of Appeals,
Eleventh Circuit.
 May 30, 1984.
 
 Richard H. Burr, III, Richard L. Jorandby, West Palm Beach, Fla., for petitioners-appellants.
 Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, Fla., for respondents-appellees.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HENDERSON, ANDERSON and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 In Case No. 84-5293 we deny the application for a certificate of probable cause and we deny the application for stay of execution. The single issue raised, i.e., the Barclay issue, requires no discussion.
 
 
 2
 In Case No. 84-5372, we grant the application for a certificate of probable cause, and we grant the application for a stay of execution, finding that two of the grounds asserted warrant this relief.
 
 
 3
 First, Ford asserts that he is entitled to a procedural due process hearing to determine whether he is currently insane. If so, this should delay his execution because such could be cruel and unusual punishment and thus proscribed by the Eighth Amendment. Ford has raised a substantial question and we stay his execution so that a panel of this court may answer it. Credible evidence presented by the petitioner indicates that Ford is insane. Two psychiatrists appointed by Florida's Governor found him psychotic.
 
 
 4
 The Supreme Court has not yet decided whether infliction of the death penalty upon an insane condemnee is cruel and unusual punishment within the meaning of the Eighth Amendment. See Caritativo v. People of the State of California, 357 U.S. 549, 78 S.Ct. 1263, 2 L.Ed.2d 1531 (1958); Solesbee v. Balkcom, 339 U.S. 9, 70 S.Ct. 457, 94 L.Ed. 604 (1950); Nobles v. Georgia, 168 U.S. 398, 18 S.Ct. 87, 42 L.Ed. 515 (1897). The Florida Supreme Court in holding that Ford was not entitled to a due process hearing relied upon Solesbee. At the time of Solesbee the United States Supreme Court had not applied the Eighth Amendment to the states through the due process clause of the Fourteenth Amendment. In Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Supreme Court incorporated the Eighth Amendment right to be free of cruel and unusual punishment to the states. For still another reason, Solesbee seems of dubious support. Since that time, as a result of Furman, the Supreme Court has drastically altered the constitutional framework in which a citizen in this country can be executed.
 
 
 5
 We believe the district court erred in holding that Ford violated Rule 9(b) of the Rules governing Sec. 2254 cases. The district court dismissed the petition on the ground that the petitioner should have asserted the insanity ground in his prior petition and that he thus abused the writ.
 
 
 6
 The district court made this ruling without taking any evidence. We then have been caused to review the factual context of Ford's first petition for the writ, which was considered in December of 1981 by the district court. Neither the evidence at that hearing, which we have reviewed, nor the district court order reflects that the district court was presented with an issue of Ford's insanity at that time. The record does reflect that in late 1981 and in 1982, counsel for Ford became apprehensive about his mental state and sought psychiatric examinations for Ford. From December of 1981 until October of 1983, Ford's case was on appeal to this court and to the United States Supreme Court from the district court's denial on December 10, 1981, of Ford's petition for writ of habeas corpus.
 
 
 7
 Since we find no evidence in the record to suggest that the incompetency issue was available in December of 1981 when Ford's first petition was filed, we conclude for the purpose of staying Ford's execution that there was no abuse of the writ.
 
 
 8
 The state argues that Ford should have filed a petition for some type of relief with respect to the insanity issue before filing the petition now under consideration[1]. However, the state does not explain to us just what Ford should have filed and when. On October 20, 1983, Ford, through his attorneys, sought exhaustion of state remedies pursuant to Florida Statute Sec. 922.07. This was after the mandate issued from this court on October 6, 1983. The Governor did not render a decision with respect to the Sec. 922.07 proceeding until he signed the death warrant.
 
 
 9
 If Ford had filed a petition for an evidentiary hearing with respect to insanity in the state courts, he would most probably have been met with a ruling that Ford's sole relief was pursuant to Florida Statute Sec. 922.07. In this very case, the Florida Supreme Court held that "the statutory procedure is now the exclusive procedure for determining competency to be executed." Ford v. Wainwright, 451 So.2d 471 at 475 Supreme Court of Florida, May 25, 1984. We believe if Ford had filed in the United States District Court for such relief, his petition would have met the same fate.
 
 
 10
 We conclude that this court's opinion in Goode v. Wainwright, 731 F.2d 1482 (1984), does not control this case. There, Goode's claim of incompetency came after he had been twice adjudicated competent in state court proceedings which were affirmed by our court. Thus, there were clear grounds for abuse of the writ in the Goode case because at the time of the filing of the successive petition, Goode had asserted the insanity ground in a prior proceeding.
 
 
 11
 Because we find that Ford's petition for relief filed in the district court did not constitute an abuse of the writ and because we believe his claim of privilege not to be executed while insane raises substantial procedural and substantive Eighth and Fourteenth Amendment grounds, we stay the execution on this first issue.
 
 
 12
 Ford's second ground for relief is his argument that Florida administers the death penalty arbitrarily and discriminatorily on the basis of the race of the victim, the race of the defendant, and other impermissible factors, in violation of the Eighth and Fourteenth Amendments. The district court rejected this claim as an abuse of the writ.
 
 
 13
 This issue, in the context of the Georgia death penalty statute, is now pending en banc consideration in this circuit. Spencer v. Zant, 715 F.2d 1562, vacated for rehearing en banc, 715 F.2d 1583 (11th Cir.1983); McCleskey v. Zant, (11th Cir.1984) (oral argument scheduled for June 12, 1984).
 
 
 14
 As we noted in Adams v. Wainwright, 734 F.2d 511, 512 (11th Cir. 1984), "The state of the law with respect to these issues is unsettled." In chronological order, see Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978) (rejecting argument that the Florida statute was being applied arbitrarily and discriminatorily in violation of the Eighth and Fourteenth Amendments because statistical evidence proffered was insufficient), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); Smith v. Balkcom, 671 F.2d 858 (5th Cir.1982) (denying Eighth and Fourteenth Amendment claims because statistics unreliable, but stating "in some instances circumstantial or statistical evidence of racially disproportionate impact may be so strong that the results permit no other inference but ... racially discriminatory intent or purpose"); Adams v. Wainwright, 709 F.2d 1443 (11th Cir.1983) (same), cert. denied, --- U.S. ----, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984); Spencer v. Zant, 715 F.2d 1562, 1578-83 (remanding Eighth and Fourteenth Amendment challenges for evidentiary hearing); Spencer v. Zant, 715 F.2d 1583 (1983) (vacating panel opinion, 715 F.2d 1562, for rehearing en banc); Sullivan v. Wainwright, 721 F.2d 316, 317 (11th Cir.1983) (following Spinkellink and Adams ), petition for stay of execution denied, --- U.S. ----, 104 S.Ct. 450, 78 L.Ed.2d 210 (1983); Stephens v. Kemp, 722 F.2d 627 (11th Cir.1983) (denying petition for rehearing en banc with six judges dissenting); Stephens v. Kemp, --- U.S. ----, 104 S.Ct. 562, 78 L.Ed.2d 370 (1983) (granting stay of execution pending Eleventh Circuit's en banc consideration of Spencer ); Smith v. Kemp, --- U.S. ----, 104 S.Ct. 565, 78 L.Ed.2d 732 (1983) (denying petition for rehearing from denial of certiorari); Adams v. Wainwright, 734 F.2d 511, (11th Cir. 1984) (granting stay pending en banc consideration of Spencer ), vacated without opinion, --- U.S. ----, 104 S.Ct. 2183, 80 L.Ed.2d 809 (1984).
 
 
 15
 Our effort to faithfully apply the principles enunciated by the Supreme Court is unusually difficult in these cases. Because of time constraints under which these issues invariably arise, both this court and the Supreme Court have found it impossible in some cases to write an opinion providing a rationale for the decision.
 
 
 16
 We can discern two possible interpretations of the Supreme Court's recent treatment of this issue: either (1) the Supreme Court sees some significant difference between the contours of the issue as it has been presented in the Florida context, as opposed to the Georgia context, or (2) the procedural posture of cases has been decisive, in that the Supreme Court has declined to entertain this issue when the issue was rejected on the merits in a prior petition.
 
 
 17
 The State argues with considerable force that the Supreme Court declined to stay the Florida executions in Sullivan and Adams, while granting a stay of the Georgia execution in Stephens, because of some significant (but unstated) difference between Florida and Georgia. Several factors undermine our confidence in the State's position. First, the position does not satisfactorily account for Smith v. Kemp, --- U.S. ----, 104 S.Ct. 565, 78 L.Ed.2d 732 (1983), in which the Supreme Court, when presented with this issue, declined to grant a stay of a Georgia execution to reconsider its denial of certiorari. Instead, the Supreme Court's action in Smith is readily explained by the procedural posture, see infra. Second, no Justice of the Supreme Court and no judge of this court has expressed the view that there is a difference between the issue as presented in Florida, as compared to the issue as presented in Georgia. Third, although pressed at oral argument, counsel for the State could not point to any facet of the evidentiary proffer which might distinguish Florida from Georgia. Finally, our own study of the two proffers (e.g., the Baldus study in Georgia and the Gross and Mauro study in Florida) leaves us unpersuaded that there is a significant difference between them.[2]
 
 
 18
 The other possible interpretation of the Supreme Court cases is that the procedural posture has been the distinguishing factor. In both Smith (Georgia) and Adams (Florida), in which stays of execution were denied, the issue was presented in a successive petition after the same claim in the initial petition had been rejected on the merits. Although Stephens, in which the Court granted a stay of execution, involved a second or successive writ, it did not involve an attempt to relitigate an issue which had already been rejected on the merits in a prior writ of habeas corpus. There is a well-established distinction in the case law, see Sanders v. United States, 373 U.S. 1, 15-19, 83 S.Ct. 1068, 1077-1079, 10 L.Ed.2d 148 (1963), between the Stephens posture, in which the rather more difficult abuse of the writ must be shown, and the Smith-Adams posture, in which the writ will be denied unless the "ends of justice" require otherwise.
 
 
 19
 As might be expected, Ford urges that we adopt this procedural distinction between his case and Adams because Ford, like Stephens, involves a successive writ, which can be barred only by a showing of abuse of the writ. This interpretation, however, must account for Sullivan, in which the Supreme Court declined to disturb this court's denial of a stay, declining to grant a stay of execution pending the filing of certiorari. Our brother, J. Henderson, places his reliance on Sullivan, and we readily acknowledge, in this uncertain state of the law, a reasonable basis for his position because Sullivan involved a successive writ in the same abuse of the writ posture as this case and Stephens. However, two factors persuade us that Sullivan is not controlling.
 
 
 20
 The first is that the decision in Sullivan to deny a stay was not a decision on the merits of Sullivan's constitutional challenge. As we recently noted in Ritter v. Smith, 726 F.2d 1505 at 1511 & nn. 16-17 (11th Cir.1984), denial of a stay pending filing and disposition of a writ of certiorari "imports no more than a decision to deny certiorari, which does not express any views on the merits of the claims presented." Id. at n. 16 (citing Graves v. Barnes, 405 U.S. 1201, 1204, 92 S.Ct. 752, 754, 30 L.Ed.2d 769 (1972) (Powell, J., in chambers)).
 
 
 21
 The second and more important factor is that Sullivan was decided before the Eleventh Circuit voted in Spencer to consider this issue en banc and before the Supreme Court granted the stay of execution in Stephens. Sullivan was decided on November 29, 1983. The Spencer issue was voted en banc on December 11, 1983. Also on December 11, 1983, six judges of this court dissented from an order denying en banc rehearing of the panel order denying a stay in Stephens v. Kemp, 722 F.2d 627 (11th Cir.1983) (Godbold, Chief Judge, Johnson, Hatchett, Anderson, and Clark, Circuit Judges, dissenting) (Kravitch, Circuit Judge, dissenting on similar grounds), stating that Stephens presented the same issue that the en banc court would consider in Spencer and that the issue "beyond peradventure ... presents a substantial question in this circuit." Id. at 628. Thereafter, on December 13, 1983, the Supreme Court in Stephens granted a stay of execution "pending decision of the United States Court of Appeals for the Eleventh Circuit in Spencer v. Zant." --- U.S. ----, 104 S.Ct. 562, 78 L.Ed.2d 370 (1983). Thus the Supreme Court in Sullivan was not presented with an argument that the issue was a substantial issue in this circuit because of its pendency en banc,[3] an argument which was later apparently accepted in Stephens. We thus conclude that Sullivan is not controlling.
 
 
 22
 Thus, our best judgment is that the Supreme Court cases do not distinguish Florida from Georgia, but rather teach that we should not be entertaining an attempt to relitigate this issue in a successive petition when the issue has already been rejected on the merits in a prior petition. By contrast, the issue can be entertained in a second habeas petition where there is no abuse of the writ. Stephens.
 
 
 23
 We conclude that Ford's assertion of his Eighth and Fourteenth Amendment claims was not an abuse of the writ. Just as in Stephens, where the Supreme Court granted a stay, the evidence and legal precedent upon which Ford relies were not available at the time of his first habeas petition. Unlike Adams and Smith, Ford is not seeking to relitigate an issue previously presented and dismissed on the merits.
 
 
 24
 We have also determined after close scrutiny that Ford presents a claim that in substance is identical to the issues currently under consideration in Spencer and McCleskey, and is the same claim that led to a stay in Stephens. Accordingly, finding in regard to this issue that Ford has presented "substantial grounds upon which relief may be granted," Barefoot v. Estelle, --- U.S. ----, ----, 103 S.Ct. 3383, 3395, 77 L.Ed.2d 1090, 1105 (1983), we alternatively grant his application for a stay of execution pending en banc consideration of Spencer.
 
 
 25
 For the two foregoing reasons, in case number 84-5372, we GRANT the certificate of probable cause and STAY the execution.
 
 HENDERSON, Circuit Judge, dissenting:
 
 26
 At the outset, I note my agreement with the majority's view that neither the Barclay harmless error issue nor the jury instruction claim merit habeas corpus relief. I disagree, however, with the views expressed by the majority that either Ford's mental incompetency argument or the allegation of arbitrary imposition of the death penalty in Florida deserve serious consideration by this court.
 
 
 27
 Turning to the latter issue first, Ford claims that the death penalty is being imposed arbitrarily in Florida. He grounds this claim in a study written by professors Gross and Mauro. On several previous occasions, this court has addressed the validity of this study in a habeas corpus setting and found it to be inadequate. I see no reason to stray from our path of clear precedent.
 
 
 28
 In Sullivan v. Wainwright, 721 F.2d 316 (11th Cir.1983), the petitioner challenged Florida's application of the death penalty based on this very same study. In denying relief, the Sullivan court found that the study was "[in]sufficient to show the Florida system to have intentionally discriminated ...." Id. at 317. The majority asserts that because Sullivan dealt with the disposition of a stay, it is not a decision on the merits. However, the clear wording of Sullivan indicates its clear intent to reach the merits. The majority also distinguishes Sullivan because it was decided before the Eleventh Circuit Court of Appeals voted to consider this issue en banc in Spencer v. Zant, 715 F.2d 1562, 1583 (11th Cir.1983). This seems to be an indication that the full court's decision to consider the merits of the Baldus study as it applies to administration of the death penalty in Georgia has some bearing on the Gross-Mauro report in Florida. I do not agree with this evaluation and my conclusion has been reinforced by the recent disposition of Adams v. Wainwright, 734 F.2d 511 (11th Cir.1984) (appeal from denials of second habeas corpus petition and motion for stay of execution).
 
 
 29
 The petitioner in Adams, a black convicted of the murder of a white, precisely as in this case, interposed a challenge to the arbitrary imposition of the death penalty in Florida. On appeal from the denial of a writ of habeas corpus, a majority of a panel of this court voted to grant a stay pending further consideration of this issue in the Georgia case. I dissented on the ground that the Sullivan panel previously addressed the validity of the Gross-Mauro study as it pertains to Florida and found it to be insufficient, a decision affirmed by the United States Supreme Court. See Sullivan v. Wainwright, --- U.S. ----, 104 S.Ct. 450, 78 L.Ed.2d 210 (1983). On appeal by the state, the Supreme Court dissolved the stay. Because of the factual similarity of this case to Adams, I feel a reiteration of the position I took in dissent in Adams is justified here.
 
 
 30
 The majority disagrees. It reasons that the Supreme Court's vacation of the stay in Adams was due to the fact that Adams previously had advanced this ground of relief in a prior petition. I cannot accept this reasoning. The differing procedural postures of Adams, who previously raised this point, and Ford, who does so now for the first time, have no bearing on the fact that both petitioners ultimately relied on the Gross-Mauro study which has been adjudicated lacking in substance. A different study affecting another state that has not yet been evaluated by any panel of this court is not relevant to whether Florida is properly administering its death penalty laws. Accordingly, on the bases of both Sullivan and the factually-similar Adams, I conclude that this claim does not justify our grant of the writ.
 
 
 31
 I note also the likelihood that this claim should be procedurally barred at this time since it was not asserted previously in Ford's first petition for habeas corpus. Albeit unsuccessful when made then, as now, the ground for relief advanced in Adams was well-known and capable of prosecution at the time of Ford's first habeas corpus application. See, e.g., Adams v. Wainwright, 709 F.2d 1443 (11th Cir.1983) (unsuccessful assertion of claim of arbitrary application of death penalty prior to Gross-Mauro study). The information which forms the basis of such a claim has always been available. Petitioners cannot simply wait to state a claim until new study upon new study emerges when those reports are predicated upon currently available information. To withhold such a ground from an initial petition when the argument was known and available at the time is an abuse of the writ.
 
 
 32
 I also believe a similar procedural default bars our consideration of Ford's claim that he is presently insane and, consequently, is constitutionally immune from execution.[1] In light of the evidence presented in Ford's first federal petition for habeas corpus in December of 1981, it is evident that, even at that time, counsel for Ford had serious doubt about his mental capacity. Additionally, the record demonstrates that in June of 1983 counsel was well-aware of this potential ground of relief. See Report of Dr. Jamal Amin, App. 1, Petition for Habeas Corpus. Regardless of the exact time that his claim of incompetency ripened, however, Ford's counsel readily admits to their knowledge of this alleged deficiency in October of 1983. In light of this admission and the clear holding of the court in Goode v. Wainwright, 731 F.2d 1482 (11th Cir.1984), I conclude that the failure of counsel to bring this matter to the attention of a court until now to be an abuse of the writ.
 
 
 33
 In Goode, after this court denied the writ on appeal from the petitioner's first habeas corpus petition, the governor began his Sec. 922.07 inquiry. On March 6, 1984, Goode filed a habeas corpus petition in the state court which raised, inter alia, his incompetency to be executed. That petition was denied on April 2, 1984, and on the following day, he filed a petition in the district court which denied the writ on April 4, 1984 without a hearing. He then appealed to this court.
 
 
 34
 The state maintained that Goode's last minute attempt to avoid the consequences of the death penalty was an abuse of the writ under Rule 9(b). Goode contended in response that he was unable to assert his "newly ripened claim" until completion of the Sec. 922.07 procedures. The court did not accept this argument, stating that his
 
 
 35
 theory assumes that the issue of insanity vel non barring execution is dependent upon the governor's implementation of the statutory procedures of Sec. 922.07. This is not so. If Goode contended, on substantive due process and eighth amendment grounds, that he could not be executed because of post-conviction insanity, he was free to assert this contention in state and federal courts from the time that the state court sentenced him to death; thereby he could secure an orderly determination of his then current mental condition.
 
 
 36
 Id. at 1483 (footnote omitted). Therefore, even accepting Ford's best argument that a claim of incompetency did not ripen until October of 1983, Goode makes clear that federal habeas corpus relief was available at that time.
 
 
 37
 Ford seeks to distinguish Goode on the ground that Goode continually asserted his incompetency throughout the course of the proceedings while Ford claims it now for the first time. I fail to see the value of this distinction since Goode was allowed to pursue his successive claim only because it was "newly ripened," that is, the court did not view his claim of incompetency as a reallegation of the previous insanity plea but as a new and distinct assertion of post-conviction incompetence. Thus, in the eyes of the Goode court, this ground was treated as a new claim for relief. This view is further evidenced by the court's admonishment that "post-conviction insanity [cannot] be held back as an issue until the eve of execution and then raised for the first time." Id.
 
 
 38
 In my view, the conclusion is inescapable that Goode binds squarely on our decision here today. Accordingly, because the issue of incompetency matured months ago at the very minimum, the failure to bring it to the federal courts until the eleventh hour is the sort of abuse condemned in Goode. I would affirm the judgment of the district court on all issues thereby denying both the stay of execution and the application for a certificate of probable cause.
 
 
 
 [1]
 We have found no precedent, and none was cited by the State, holding that it is a per se abuse of the writ to fail to file a second habeas petition while the first petition is still pending. Assuming that the law might and should evolve to impose such a duty, we would not be inclined to do so without the benefit of an evidentiary hearing to give Ford and his counsel an opportunity to explain their actions. Such actions would fall more clearly under Rule 9(a) of the Rules governing Sec. 2254 cases, allowing dismissal of delayed petitions if the State's ability to respond is impaired. However, the State makes no such argument here
 
 
 [2]
 Substantive differences between the Baldus study on Georgia and the Gross and Mauro Florida results are not readily apparent. Both studies examined a number of factors potentially influencing the imposition of the penalty under the respective statutes and corrected the deficiencies in methodology and results that characterized studies previously found inadequate to state a claim. Both studies respectively concluded that, all legitimate sentencing variables held constant, in Florida and Georgia: (1) a white victim murder is significantly more likely to result in a death sentence than is a black victim murder, and (2) a black perpetrator is more likely to receive a death sentence. The Gross and Mauro study expressly compared its results to the Baldus results, and found them comparable. Gross & Mauro, Patterns of Death: An Analysis of Racial Disparities in Capital Sentencing and Homicide Victimization, man. pp. 105-110 (October 1983)
 
 
 [3]
 In fact, footnote 3 of the Sullivan opinion reflects the Supreme Court's then understanding that the issue before the Spencer panel was merely that the district court had not had an opportunity to consider the proffer
 
 
 [1]
 It should be emphasized that the state is in no way attempting to execute an insane person. On the contrary, Florida employs a statutory procedure to avoid that result, see Fla.Stats. Sec. 922.07, which has been upheld under a due process challenge. See Goode v. Wainwright, 731 F.2d 1482 (11th Cir.1984)