478 So.2d 1043 (1985)
James E. BILLIOT
v.
STATE of Mississippi.
No. 54960.
Supreme Court of Mississippi.
October 30, 1985.
Rehearing Denied December 4, 1985.
Thomas J. Lowe, Jr., Jackson, Bruce H. Hanley, Minneapolis, Philip G. Villaume, St. Paul, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Marvin L. White, Jr. and Amy D. Whitten, Sp. Asst. Attys. Gen., Jackson, for appellee.
En Banc.

ON APPELLANT'S CONSOLIDATED MOTION TO VACATE, OR SET ASIDE JUDGMENT AND SENTENCE
SULLIVAN, Justice, for the Court:
James E. Billiot has applied for leave to file a consolidated motion to vacate, or set aside, judgment and sentence in his capital murder conviction. Billiot v. State, 454 So.2d 445 (Miss. 1984).
Billiot, in the course of a robbery, bludgeoned to death Wallace Croll, Jr. Billiot was convicted of capital murder and his appeal to this Court was affirmed. Billiot sought and was denied a writ of certiorari by the Supreme Court of the United States on March 25, 1985. Billiot v. Mississippi, ___ U.S. ___, 105 S.Ct. 1232, 84 L.Ed.2d 369 (1985).
*1044 Now before us is Billiot's application for post conviction relief pursuant to Mississippi Code Annotated § 99-39-1 et. seq., and assigns the following as grounds:
A. Petitioner was denied the effective assistance of counsel at the sentencing phase of his capital trial;
B. Prosecutorial misconduct during argument violated the petitioner's right to a fundamentally fair trial and a non-arbitrary sentencing proceeding pursuant to the Mississippi Constitution and the United States Constitution;
C. Petitioner is presently insane. Because the Eighth amendment prohibits the execution of an insane person, petitioner's execution should be stayed;
D. The use, by the prosecution, during rebuttal at the guilt phase of the bifurcated trial, of statements made by a defendant during a court-ordered psychiatric examination limited to the issue of competence to stand trial, to rebut the defense of insanity, in the absence of the psychiatrist advising the defendant of his right to remain silent, violated that defendant's Fifth and Fourteenth Amendment rights, violates Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and raises an important question left open in Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981);
E. The use, as an "aggravating circumstance", of the fact that a murder was committed in the course of the commission of a felony, in order to justify the imposition of a sentence of death, violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution when the so-called "aggravating circumstance" itself is a necessary element of the underlying crime of capital murder;
F. The finding by the jury of the "especially heinous, atrocious and cruel" aggravating circumstances violated the Eighth and Fourteenth Amendments to the United States Constitution;
G. The statute and instruction at the sentencing phase shifted the burden of proof to the petitioner and contained no standards for weighing, in violation of the Eighth and Fourteenth Amendments to the United States Constitution;
H. The trial court's denial of petitioner's motion for a change of venue unconstitutionally abridged his right to a trial by an impartial jury, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article III, Section 26 of the Mississippi Constitution;
I. The Mississippi Supreme Court misunderstood the psychological testimony in enunciating its decision relative to a "majority report" and "minority report";
J. The petitioner was unconstitutionally subjected to double jeopardy for the underlying felony of robbery in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article III Section 22 of the Mississippi Constitution;
K. The verdict of the jury finding petitioner guilty of capital murder was against the great weight of the evidence because the state failed to prove the underlying felony of robbery;
L. The death qualification of the jury denied petitioner an impartial jury from a cross-section of the community in violation of the Sixth and Eighth and Fourteenth Amendments to the United States Constitution and Article III Section 26 of the Mississippi Constitution.
Petitioner admits, and this Court finds, that Issues D, E, F, G, H, I, J, K, and L have already been raised and litigated. They may not be relitigated by way of post-conviction relief as they are res judicata. Callahan v. State, 426 So.2d 801 (Miss. 1983), cert. den. 461 U.S. 943, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1984); Leatherwood v. State, 473 So.2d 964 (Miss. 1985); Wilcher v. State, 479 So.2d 710 (Miss. 1985).
What remains are petitioner's claims that he was denied effective assistance of counsel at sentencing, that there was prosecutorial misconduct during argument, and that *1045 he is presently insane and therefore cannot be executed.
Of the three remaining claims, one of them, B, is not res judicata because it was not raised at the trial nor on appeal, but it could and should have been and no reason is advanced by the petitioner for his failure to raise the prosecutorial misconduct, if any, in a timely fashion. By this failure, this allegation has been waived and is outside the scope of this Court's collateral review. Under the authority of Mississippi Code Annotated § 99-39-21 (Supp. 1984), failure to raise issues capable of resolution at trial and/or on direct appeal constitutes a waiver of those claims absent a showing of cause and actual prejudice. Wilcher, supra; Leatherwood, supra. There is no attempt to overcome this bar and through the doctrine of waiver this claim cannot be considered.
Proposition C, the present insanity of the petitioner, fails of proof and is based upon facts already determined to the contrary, and thus the underlying basis of the claim is res judicata. Billiot supports his claim of present insanity with the conclusions of Dr. William Johnson, based solely upon interviews and examination conducted prior to the trial. This does not satisfy the required showing of supervening present insanity and Billiot is barred from relitigating the issue of sanity as addressed by Dr. Johnson's affidavit.
Petitioner has failed to even suggest that his insanity occurred after his trial and conviction. A post conviction writ does not lie where the insanity of the applicant has not developed since his trial and sentence of death. Mitchell v. State, 179 Miss. 814, 176 So. 743 (1937). If this remedy applies at all it is to cases of supervening insanity. Mississippi Code Annotated § 99-19-57(2)(a) (Supp. 1984).
The petitioner claims that his present mental condition stems from that which existed prior to the time of the offense and the trial. It follows in these circumstances that the action of the trial court in determining that Billiot was sane and competent is also res judicata as to the issue of his present sanity, as the matter is raised in this petition. These issues were thoroughly litigated at trial and upon direct appeal and may not be litigated again by way of post conviction writ. Mississippi Code Annotated § 99-39-21(2)(3) (Supp. 1984); Mitchell, supra. See also Gray v. Lucas, 710 F.2d 1048, 1053 (5th Cir.1983), reh. den. 714 F.2d 137 (1983), and cert. den. 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983).
When petitioner's application is considered in conjunction with the record at trial and the counter-affidavit of Dr. Michael Whelan, it becomes clear that, on the merits, Billiot has failed to establish to a reasonable probability that he is presently insane. That is the test that must be passed for the execution to be stayed. Gray, supra.
We do not deal here with the M'Naghten standard nor the test used to determine competency to stand trial. The test for supervening insanity is found in Mississippi Code Annotated § 99-19-57 (Supp. 1984):
(b) For the purposes of this subsection, a person shall be deemed insane if the court finds the convict does not have sufficient intelligence to understand the nature of the proceedings against him, what he was tried for, the purpose of his punishment, the impending fate which awaits him, and a sufficient understanding to know any fact which might exist which would make his punishment unjust or unlawful and the intelligence requisite to convey such information to his attorneys or the court.
See also Gray v. Lucas, supra, at 1054.
We, therefore, conclude that not only is the claim based upon facts that are res judicata, the claim itself fails on its merits as it is insufficient to establish to a reasonable probability that Billiot is insane for purposes of Mississippi Code Annotated § 99-19-57 (Supp. 1984).
Did Billiot have ineffective assistance of counsel at the sentencing phase of his trial? The right to counsel is secured both by Article III, Section 26 of the Mississippi *1046 Constitution and the Sixth Amendment and the Fourteenth Amendment of the United States Constitution. Mere appointment of counsel does not satisfy the requirement, for the counsel must be effective. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We have adopted the Strickland standard of effective assistance of counsel in Stringer v. State, 454 So.2d 468 (Miss. 1984), cert. den. ___ U.S. ___, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985), and applied it in Leatherwood v. State, supra; Thames v. State, 454 So.2d 486 (Miss. 1984); In Re Hill, 460 So.2d 792 (Miss. 1984); Ward v. State, 461 So.2d 724 (Miss. 1984); and Lambert v. State, 462 So.2d 308 (Miss. 1984). The Strickland guidelines are summarized as:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable... .
These basic duties neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances... . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel on the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.
466 U.S. at ___-___, 104 S.Ct. at 2064-65, 80 L.Ed.2d at 693-94.
The following charges of ineffective assistance of counsel are contained in this application:
1. Counsel's failure to reasonably investigate to discover the existence of mitigating evidence.
2. Counsel's failure to object to jury instruction C-01 at the guilt phase and failure to object to the jury instructions relative to mitigating factors at the sentencing phase.
3. Counsel's failure to object to improper closing argument.
4. Counsel's ignorance of the fourth mitigating factor, which ignorance was not strategic or tactical.
5. Counsel's failure to call Dr. Johnson at the sentencing phase to testify on the defendant's behalf as to two mitigating factors found in Mississippi Code Annotated § 99-19-101(6)(f) and (b) (Supp. 1983).
We have again carefully reviewed the record in this case, and we conclude that none of the issues raised by Billiot concerning the representation he received have any merit, applying the standards set forth in Strickland, supra. Billiot has not shown an act or omission which can be considered an unreasonable lapse in representation and he has not proved that, but for the unprofessional errors of his counsel, there is a probability that the proceeding would have been different. There was no breakdown in the adversary process that renders the result unreliable. We hold that James E. Billiot was not denied effective assistance of counsel.
CONSOLIDATED MOTION TO VACATE, OR SET ASIDE JUDGMENT AND SENTENCE DENIED.
*1047 PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER and ANDERSON, JJ., concur.
ROBERTSON, J., specially concurring.
HAWKINS, J., not participating.
ROBERTSON, Justice, specially concurring:
On its merits I would deny the present application, and to that end I join the opinion of the majority, with the significant exception of its treatment of the present insanity issue. On that issue, Proposition C as urged by James E. Billiot, I reach the result achieved by the majority although by a different route. This point has been urged upon us in the past. For this reason and because we will most certainly hear of it in the future, comment is timely.
The present application in part asks that execution of the sentence of death be stayed on the grounds that James E. Billiot is presently insane. To be sure, our law authorizes, indeed, requires a stay of execution where the condemned becomes insane after conviction but prior to execution of the sentence of death. Miss. Code Ann. § 99-19-57(2) (Supp. 1984); Musselwhite v. State, 215 Miss. 363, 60 So.2d 807 (1952). Under our law heretofore existing, the execution must be stayed as long as the condemned remains insane  be that one year, ten years or however long. Our law further prescribes that, once the condemned is restored to his sanity, execution of the sentence of death would then proceed in the manner prescribed by law. Musselwhite v. State, 215 Miss. at 372-73, 60 So.2d at 811. Such an approach to infliction of the penalty of death is itself insane, and inhuman as well.
For reasons I find inexplicable, our legislature reenacted this law of present insanity in 1984.[1] Miss. Laws, 1984, ch. 448, § 5, codified as Miss. Code Ann. § 99-19-57(2) (Supp. 1984). No change of substance is there made. The amended statute provides that the condemned, determined insane, shall be committed to the Mississippi State Hospital at Whitfield, examined periodically with monthly reports to be made of progress toward restoration of sanity. Once that goal is achieved, the condemned man is to be returned to the custody of the Department of Corrections. Our previous statute provided that, upon restoration of sanity, the prisoner would be executed. Miss. Code Ann. § 99-19-57 (1972). The present statute does not carry forward that express language. From a reading of the new statute as a whole, it is clear to my mind that the substance of our law is unchanged.
Ordinarily, I accept without hesitation the primary lawmaking authority of the legislature of this state. Except when it acts contrary to the Constitution of the *1048 United States or to the Constitution of the State of Mississippi, the enactments of the legislature ordinarily are supreme and enforcement of which is obligatory upon this Court. See, e.g., my opinions in Hall v. State, 427 So.2d 957, 962 (Miss. 1983); Chill v. Mississippi Hospital Reimbursement Commission, 429 So.2d 574, 580 (Miss. 1983); Lowicki v. Lowicki, 429 So.2d 917, 919 (Miss. 1983); Segarra v. State, 430 So.2d 408, 411-12 (Miss. 1983). I would ordinarily hesitate only slightly less to follow authoritative prior decisions of this Court. In my view we are here confronted with a rule of law which is so irrational, so inhuman, and so insane itself that it should not be enforced. Indeed, the process sanctioned by our law is so bizarre that I regard it to inflict cruel and unusual punishment. Miss. Const. Art. 3, § 28 (1890).
Our law provides that, if a person condemned to death be found insane, his execution shall be stayed pending his restoration to sanity. When originally enacted, this law no doubt proceeded upon the premise that it would be a violation of some then accepted notion of humanity to put to death a person who is insane. Giving them the benefit of the doubt, I accept that those who made this law were motivated by a combination of jurisprudential and humanitarian considerations sincerely held and even laudable at the time given the then prevailing "standards of decency that mark the progress of a maturing society". Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). See Musselwhite v. State, supra, 215 Miss. at 367-373, 60 So.2d at 809-11. Seen today, the premise makes no sense.[2]
The most offensive aspect of the new statute is its definition of insanity. For present purposes a person shall be deemed insane
if he does not have sufficient intelligence to understand ... the purpose of his punishment, [and] the impending fate which awaits him, ... .
Miss. Code Ann. § 99-19-57(2)(b) (Supp. 1984).
En route to granting a stay of execution on authority of the predecessor statute, the Musselwhite court was more poetic. The Court found that the condemned
had lost awareness of his precarious situation. Amid the darkened mists of mental collapse, there is no light against which the shadows of death may be cast. It is revealed that if he were taken to the electric chair, he would not quail or take account of its significance.
215 Miss. at 367, 60 So.2d at 809.
Musselwhite held that the execution of the condemned should be stayed
until such time as he may properly be adjudged to have regained his sanity.
215 Miss. at 372-73, 60 So.2d at 811.
The law's scheme contemplates that, so long as the condemned remains insane, he shall not be executed. Presumably, by becoming sufficiently mad and remaining so the prisoner could escape execution. One does not have to possess great powers of perception to see that few will qualify under the definition of Section 99-19-57(2)(b) but of those who do their madness is likely a permanent condition. All of this places the State in an anomalous position: so long as the condemned is insane, without capacity for positive life experiences, we will keep him alive but once a ray of mind's light appears, we will extinguish it.
I have repeated above my assumption of good faith on the part of those who wrote the rule. In practice, however, I cannot ignore its appeal to man's baser instincts. We crave the murderer's suffering, not his death. Society's thirst for revenge is *1049 quenched by what happens in the moments prior to execution  what our imaginations tell us is going through the mind of the condemned from the onset of certainty regarding his fate until the pellets drop and the deadly fumes produce loss of consciousness. We would be disappointed if the one we want to suffer so had not the capacity to "quail". His death is anticlimactic, almost disappointing for it ends our capacity to inflict further suffering.
If we were to grant Billiot the relief he requests, we would set in motion a process of no doubt prolonged psychiatric treatment and therapy, the only end of which would be that he would properly "quail" at the advent of the gas chamber. I will not be a part of such a macabre spectacle.
NOTES
[1] I well recognize that over the years many thoughtful jurists have regarded execution of the insane as unconstitutional. See Justice Felix Frankfurter's dissent in Solesbee v. Balkcom, 339 U.S. 9, 14, 70 S.Ct. 457, 460, 94 L.Ed. 604 (1950); and Justice Harlan's concurring opinion in Caritativo v. California, 357 U.S. 549, 550, 78 S.Ct. 1263, 1263, 2 L.Ed.2d 1531 (1958). The Supreme Court has not yet decided whether the infliction of the death penalty upon an insane condemnee is cruel and unusual punishment as proscribed by the Eighth Amendment. However, the Eleventh Circuit in Ford v. Strickland, 734 F.2d 538 (11th Cir.1984) aff'd, ___ U.S. ___, 104 S.Ct. 3498, 82 L.Ed.2d 911 (1984) held for the condemnee on that issue. The Ford court held:

... (W)e believe his claim of privilege not to be executed while insane raises substantial procedural and substantive Eighth and Fourteenth Amendment grounds ...
734 F.2d at 540. See also Ford v. Wainwright, 752 F.2d 526 (11th Cir.1985). But see Goode v. Wainwright, 731 F.2d 1482 (11th Cir.1984).
In spite of the conflicting opinions by the Eleventh Circuit, some writers and commentators have given wide currency to this notion. See generally Note, The Eighth Amendment And The Execution Of The Presently Incompetent 32 Stan.L.Rev. 765, 778-80 (1980); Radin, The Jurisprudence Of Death: Evolving Standard For the Cruel And Unusual Punishment Clause, 126 U.Pa.L.Rev. 989, 1027-30 (1978); Note; Insanity Of The Condemned 88 Yale L.J. 533, 535-37 (1979). For other traditional justifications for the rule see Solesbee, 339 U.S. at 16-20, 70 S.Ct. at 460-462; Hazard and Louisell, Death, The State, And The Insane: Stay Of Execution, 9 UCLA L.Rev. 381, 381-89 (1962).
[2] Though his context was wholly different, Justice Holmes, in his classic essay, The Path Of The Law, 10 Harv.L.Rev. 457 (1897) once wrote:

It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.
10 Harv.L.Rev. at 467.
The rule I assault today may be traced only to the time of Henry VIII. See Musselwhite v. State, 215 Miss. at 367, 60 So.2d at 809. It is none the less irrational.