## SULLIVAN *v.* WAINWRIGHT, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, ET AL.

No. A–409.   Decided November 29, 1983

Per Curiam.

Applicant was sentenced to death in November 1973 for the murder of the manager of a restaurant he had robbed. His conviction and sentence were affirmed by the Florida Supreme Court and this Court denied certiorari. *Sullivan v. State*, 303 So. 2d 632 (Fla. 1974), cert. denied, 428 U. S. 911 (1976).   After exhausting state postconviction remedies,

*Sullivan* v. *State,* 372 So. 2d 938 (Fla. 1979), applicant filed his first habeas petition in 1979.[1] The District Court held an evidentiary hearing and denied the writ. The Eleventh Circuit affirmed, and this Court denied certiorari. *Sullivan* v. *Wainwright,* 695 F. 2d 1306 (CA11 1983), cert. denied, *post,* p. 922. In October 1983, applicant filed his second petition for postconviction relief in state court. The denial of that relief was affirmed on appeal, *Sullivan* v. *State,* 441 So. 2d 609 (Fla. 1983), and applicant filed a second petition for writ of habeas corpus in the federal court. Following a hearing, the District Court declined to issue the writ, and refused to issue a stay of execution or a certificate of probable cause to appeal. The Eleventh Circuit affirmed, with one judge dissenting in part. That court issued a temporary stay in order to allow a vote on applicant's suggestion for rehearing en banc. That stay was lifted when the suggestion was denied.[2]

This application for a stay pending completion of the rehearing vote was presented to JUSTICE POWELL as Circuit Justice on November 28, 1983. Counsel requested that the papers be treated as an application for a stay pending filing of a writ of certiorari under 28 U. S. C. § 2101(f), and JUSTICE POWELL referred the application to the Court.

Applicant raises essentially five claims: (i) that he was denied the right to counsel; (ii) that he was denied effective assistance of counsel; (iii) that the jury that convicted him was biased in favor of the prosecution; (iv) that he was denied proportionality review; and (v) that the Florida death penalty statute has been applied discriminatorily against blacks.

The first three of these claims have been presented several times previously in both state and federal courts and have

---

[1] In addition, applicant was a plaintiff in an action attacking the Florida executive-clemency procedure. See *Sullivan* v. *Askew,* 348 So. 2d 312 (Fla.), cert. denied, 434 U. S. 878 (1977).

[2] Applicant's case has been considered by at least 10 state and federal courts other than this one, and twice before by this Court.

been found to be meritless. Applicant's claim that he was entitled to proportionality review was addressed and found meritless by the Florida Supreme Court. *Id.*, at 613–614. His case was one of the earliest to be decided under Florida's current death penalty statute. The State Supreme Court has used it as a reference point, comparing all subsequent capital cases to applicant's case to ensure proportionality. It therefore cannot be alleged that the State has failed to compare this sentence with others decided under this statute to ensure proportionality. Whatever our decision in *Pulley* v. *Harris*, No. 82–1095 (cert. granted, 460 U. S. 1036 (1983)), may be, it will not disturb the Florida Supreme Court's ruling.

Applicant apparently first raised the issue of discriminatory application of the statute in a supplement to his most recent state habeas corpus petition, which was filed on November 15, 1983. Counsel for applicant, who is white, present voluminous statistics that they say support the claim of discriminatory application of the death sentence. Although some of the statistics are relatively new, many of the studies were conducted years ago and were available to applicant long before he filed his most recent state and federal habeas petitions. The Florida Supreme Court and both the Federal District Court and the Eleventh Circuit have considered these data and determined in written opinions that they are insufficient to show that the Florida system is unconstitutionally discriminatory. On the basis of the record before this Court, we find there is no basis for disagreeing in this case with their decisions.[3]

---

[3] Judge Anderson dissented in the court below on the ground that the statistics presented in this case were equal in quality to those presented with respect to Georgia's death penalty statute in *Spencer* v. *Zant*, 715 F. 2d 1562, 1578–1583 (CA11 1983). In that case and the companion case of *Ross* v. *Hopper*, 716 F. 2d 1528, 1539 (CA11 1983), the Eleventh Circuit remanded the statistical claim to the District Court for a hearing. This case is different from those because in this case both of the lower courts, as

This case has been in litigation for a full decade, with repetitive and careful reviews by both state and federal courts, and by this Court.   There must come an end to the process of consideration and reconsideration.   We recognize, of course, as do state and other federal courts, that the death sentence is qualitatively different from all other sentences, and therefore special care is exercised in judicial review.

The application for a stay of execution is denied.

*It is so ordered.*

JUSTICE WHITE and JUSTICE STEVENS concur in the denial of a stay.

CHIEF JUSTICE BURGER, concurring.

In joining the *per curiam* opinion of the Court, I emphasize that this case has been in the courts for 10 years and is here for the fourth time.   This alone demonstrates the speciousness of the suggestion that there has been a "rush to judgment."   The argument so often advanced by the dissenters that capital punishment is cruel and unusual is dwarfed by the cruelty of 10 years on death row inflicted upon this guilty defendant by lawyers seeking to turn the administration of justice into the sporting contest that Roscoe Pound denounced three-quarters of a century ago.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

I

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the

---

well as this Court, have had the opportunity to consider the statistics.   In *Spencer*, the Eleventh Circuit found it "unlikely that the district court could have adequately analyzed the [statistical] evidence insofar as it was not then available except by live testimony."   715 F. 2d, at 1582.   The court therefore remanded to the District Court to consider the evidence. *Ross* was treated identically because it had been consolidated with *Spencer* in the District Court.   *Ross, supra,* at 1539.

Eighth and Fourteenth Amendments, *Gregg* v. *Georgia*, 428 U. S. 153, 227 (1976) (BRENNAN, J., dissenting), I would grant the application and stay the execution of applicant Sullivan.

## II

Even if I accepted the prevailing view that the death penalty may constitutionally be imposed under certain circumstances, I would grant the application because Sullivan has raised a substantial claim concerning the constitutionality of his death sentence. In particular, Sullivan alleges that application of the Florida death penalty statute violates the Equal Protection Clause because it discriminates against capital defendants solely on the basis of their race and the race of their victims. For support, Sullivan has proffered numerous scholarly studies, several of which are yet to be published, that provide statistical evidence to substantiate his claim. Although the Court has avoided ruling on similar claims in the past, and continues to avoid the issue by its decision tonight, the claim is clearly deserving of further consideration. Indeed, as the Court of Appeals for the Eleventh Circuit has recognized in a similar case, "the merits of this allegation cannot be assessed without a more detailed consideration of the evidence proffered" and therefore the applicant "is entitled to an evidentiary hearing on the merits of the claim as a matter of law." *Spencer* v. *Zant*, 715 F. 2d 1562, 1582–1583 (1983). See *Townsend* v. *Sain*, 372 U. S. 293 (1963).

I see no reason to depart from that sensible approach in this case. In fact, the Court has had only 24 hours to examine the voluminous stay application and exhibits that have been filed on Sullivan's behalf. The haste with which the Court has proceeded in this case means not only that Sullivan's claim has not received the thoughtful consideration to which it is entitled, but also that the Court has once again rushed to judgment, apparently eager to reach a fatal conclusion.

I dissent.