David Leroy WASHINGTON,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary of Florida Department of Corrections, Respondent-Appellee.

No. 84–5495.

United States Court of Appeals, Eleventh Circuit.

July 12, 1984.

Richard H. Burr, III, Richard L. Jorandby, West Palm Beach, Fla., for petitioner-appellant.

Carolyn Snurkowski, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before RONEY, HILL and CLARK, Circuit Judges.

PER CURIAM:

David Leroy Washington appeals to this court from the order of the district court denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. The district court granted a certificate of probable cause to appeal in forma pauperis. In accordance with the local rules of this circuit and the instructions of the Supreme Court in *Barefoot v. Estelle*, — U.S. —, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), we scheduled this matter for a hearing on the merits which was held at 10:45 a.m. on July 12, 1984.[1] After the hearing, we have fully considered the issues presented and affirm the district court's order denying habeas relief. We do not modify the stay of execution entered by the district court, which will expire of its own accord at 6:59 a.m. on July 13, 1984, so that any further proceedings in this case can progress in an orderly manner.

■ Washington presented two claims for relief before the state courts and before the district court. He first contended that the death penalty in Florida is unconstitutional in that it is administered in an arbitrary, capricious, and racially discriminatory fashion in violation of the Eighth and Fourteenth Amendments to the United States Constitution. This issue is controlled, adversely to appellant, by *Sullivan v. Wainwright*, — U.S. —, 104 S.Ct. 450, 78 L.Ed.2d 210 (1983), and *Wainwright v. Ford*, — U.S. —, 104 S.Ct.

3498, 82 L.Ed.2d — (1984). *See also Sullivan v. Wainwright*, 721 F.2d 316 (11th Cir.1983); *Adams v. Wainwright*, 709 F.2d 1443, 1449 (11th Cir.1983). The district court properly denied the petition insofar as it proceeded on this ground.

■ Appellant also asserts that his sentencing was unconstitutional because of remarks of the prosecutor referring to victims at sentencing. The prosecutor's entire argument is attached as an appendix. This argument was made to the judge sitting without a jury. Appellant had waived an advisory jury, electing to be sentenced by the judge. No exception was taken to these remarks at the sentencing hearing, on direct appeal, at the initial collateral attacks in the state courts, and in previous habeas corpus proceedings in the federal courts. The state courts of Florida regularly review assertions of improper arguments of prosecutors. *Singer v. State*, 109 So.2d 7 (Fla.1959). There is nothing to indicate that a Florida sentencing judge could not cull out any improper considerations advanced in argument and disregard them. The context of the remarks demonstrates that they were introductory to and submerged by far more dramatic, but entirely proper, observations of the prosecutor. We cannot conclude that the remark to which exception is taken was likely to have had any effect upon the sentencing decision of the judge, sitting without a jury.

The judgment of the district court, denying the petition is

AFFIRMED.

APPENDIX

MR. GERSTEIN: Does Your Honor desire to hear from the State first?

THE COURT: Yes, sir.

---

1. This is the latest in a long series of proceedings in which Washington has attacked his conviction and sentence. *See, e.g., Washington v. State*, 362 So.2d 658 (Fla.1978), *cert. denied*, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979); *Washington v. State*, 397 So.2d 285 (Fla.1981); *Washington v. Strickland*, 693 F.2d 1243 (5th Cir.1982) (*en banc*), *aff'd in part and rev'd in part, Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

MR. GERSTEIN: If Your Honor please, this is a case in which capital punishment, the death penalty, is as warranted as any factual situation that will ever appear before Your Honor and is warranted under the statute setting aggravated circumstances as any situation that will ever appear before Your Honor.

This defendant has left in his wake a trail of human destruction involving three dead persons, a woman who is partially blinded, another woman who is in a coma and who, according to the medical testimony, will be nothing more than a vegetable. He has left a series of people shot and stabbed while he carried out murder and robbery and kidnapping.

When the People of the State of Florida, through their elected representatives, established the death penalty, it certainly was with this kind of crime in mind. Nothing occurs to me that would adequately punish this series of events other than the death penalty.

In recent days, we have seen the media give a great deal of attention to the plight of persons who face the death penalty. We have seen relatively little attention given to the plight of victims and their families. It is especially true in this situation.

I was especially moved by the circumstances involving the final victim, who was a young student, some twenty years of age, who was working his way through college by holding down two jobs, who had planned to become a tax lawyer, who was helping to support his family, who had been left without a father because his father was killed in the service of his country overseas.

He became the last victim in a chain of horror stories that has rarely been exceeded in this community and he became the last victim as a result of the defendant's total greed.

There is a portion of the confession in connection with the stabbing and killing of Frank Meli that is horrendous. The question is posed to the defendant, "When you say you put a pillow over his face, what for?" The answer is "He—" referring to Meli, "—when we got into it, he just start hollering when I stabbed him. When I stabbed him, that's when he started hollering. Then he just kept on hollering. Then when he stopped hollering, he just start moaning real loud. Then he start saying the Lord's Prayer. Said it three or four times, over and over." It comes from page 15 and 16 of the defendant's statement.

It seems to me, Your Honor, that of the aggravating circumstances set out in the statute, six of the eight aggravating circumstances would apply to the final homicide, to the one from which that statement in the confession is taken. The defendant himself concedes through counsel that two of the aggravating circumstances apply to all of them; that's conceded; that is that all three killings were during the commission of robberies or kidnapping, that they were for money. We respectfully submit that Meli was killed to keep him from identifying his assailants, to frustrate the enforcement of the law, since there would be no identity; that it was especially cruel and heinous and atrocious. I have examined the mitigating circumstances and I don't find one within the statute that would warrant any sympathy, any consideration, any leniency, any mercy from Your Honor or from anyone else.

I don't know what we can do to stop this kind of thing in this community but I do know that the people of this State have enacted a law that calls for capital punishment, the death penalty, in certain instances and in certain crimes. I do know that it is high time that we had some of the same concern for the victims of crime and their families that we continually exhibit for defendants in this State and in this country. No one is going to compensate the victim of this crime or his family and there is little that we can do except to see to it that there is some justice and we can do that by seeing to it that the death penalty is assessed in this case.

THE COURT: Mr. Tunkey?

MR. TUNKEY: Your Honor, just briefly.

*    *    *    *    *    *

MR. GERSTEIN: May I in rebuttal respond very briefly?

\* \* \* \* \* \*

THE COURT: I will hear it. If you want to make further comment, Mr. Tunkey, I will hear you.

MR. GERSTEIN: Mr. Tunkey says that the People of the State of Florida have never voted for capital punishment. I don't know how the people of this state establish laws other than through their elected representatives, since we do not submit our laws to public referendum before they are enacted. They are enacted through elected representatives.

I won't attempt to play God and say whether or not there is a spark of anything that's decent within this defendant, save to express my firm conviction to Your Honor that if there is a spark of anything that is decent within him, he has not exhibited it at any time in any of the things that have been related to this Court. There is nothing of human decency that was exhibited at any time by him. And further, I have listened carefully to Mr. Tunkey as he speaks of the hopes and aspirations of this defendant, and I reiterate to Your Honor what about the hopes and the aspirations of the victims and their families? I don't know what the future will hold. I don't know whether the law that says this defendant cannot be paroled within 25 years will always be the law in this state. I don't know what this defendant will do in prison. But I do know that the people have provided one form of punishment that is the appropriate punishment, and the only appropriate punishment for these crimes.