Daniel Morris THOMAS,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Secretary,
Florida Dept. of Corrections,
Respondent-Appellee.

No. 84-3408.

United States Court of Appeals,
Eleventh Circuit.

July 17, 1985.

Douglas N. Duncan, Foley, Colton & Duncan, West Palm Beach, Fla., for petitioner-appellant.

Theda James Davis, Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before RONEY, FAY and JOHNSON, Circuit Judges.

RONEY, Circuit Judge:

Daniel Morris Thomas was convicted and sentenced to death for the murder of Charles Anderson. After direct appeal and post-conviction proceedings in the Florida

courts, the federal district court denied Thomas' habeas corpus petition. Thomas raises four issues on appeal:

(1) whether he was denied effective assistance of conflict free counsel.

(2) whether Florida law at the time of his sentencing hearing discouraged his attorney from investigating and introducing evidence of nonstatutory mitigating circumstances, depriving him of either due process or effective assistance of counsel.

(3) whether the *Brown* issue as decided in *Ford v. Strickland*, 696 F.2d 804 (11th Cir.) (*en banc*), *cert. denied*, — U.S. —, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), should be reconsidered; and

(4) whether the Florida death penalty is being administered in a racially or otherwise discriminatory manner.

We affirm.

On January 1, 1976, a black male wearing a ski mask and gloves and armed with a rifle broke into the home of Mr. and Mrs. Charles Anderson. The intruder shot and killed Mr. Anderson, committed sexual battery on Mrs. Anderson, and stole several items from the house. On December 21, 1976, Thomas was indicted and charged with first degree murder, sexual battery, robbery, and burglary in connection with the events at the Anderson home.

At trial, law enforcement officers and a paid informant testified that shortly after the Anderson murder, they purchased from Thomas and a neighbor, Lee O. Martin, a number of handguns, one of which had been stolen from the Andersons' residence. A search warrant was obtained, and the residences of both men were searched, turning up the murder weapon, ski masks, and several other items stolen from the Andersons' home.

The jury found Thomas guilty on all counts and recommended the death penalty. On April 15, 1977, the trial judge sentenced Thomas to death. The Florida Supreme Court affirmed his conviction and sentence. *Thomas v. State*, 374 So.2d 508 (Fla.1979), *cert. denied*, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980). Thomas' motion for post-conviction relief was denied by the state court following an evidentiary hearing on the ineffective assistance of counsel issue, and the Florida Supreme Court affirmed. *Thomas v. State*, 421 So.2d 160 (Fla.1982).

*Ineffective Assistance of Counsel*

Thomas claims that at his trial and sentencing he was deprived of his Sixth Amendment right to effective assistance of conflict free counsel. An attorney from the Public Defender's Office for the Tenth Judicial Circuit was appointed to represent Thomas, but Thomas completely refused to speak with his attorney concerning the case so that the attorney was forced to investigate the case and defend Thomas without the defendant's assistance.

At Thomas' state post-conviction hearing, the court heard testimony from Dan Brawley, the public defender appointed to represent Thomas. Brawley testified that he had visited Thomas on the day of his arraignment. He was accompanied by Larry Whitten, the chief investigator from the Tenth Judicial Circuit Public Defender's Office. Thomas sat in complete silence for about ten minutes as Brawley and Whitten introduced themselves and began asking him questions regarding the case. Thomas then abruptly walked out of the meeting.

Brawley continued to review the file, investigate, and prepare the case. About two weeks later, Whitten returned alone to visit Thomas and was again unable to communicate with him. Four or five weeks after the first meeting, Brawley visited Thomas a second time and could elicit no comment whatsoever from his client. After a refusal by the court to appoint other counsel, the defendant continued his refusal to communicate throughout the trial.

Thomas alleged that the lack of communication deprived him of his right to effective counsel because other counsel could have communicated with him and discovered information that would have enabled them to present a better defense. The district court considered Thomas' claim to

be the "ultimate case of frivolity" due to the fact that it was premised not on defense counsel's acts or omissions but rather on Thomas' absolute refusal to communicate. It noted that Thomas compounded the problem by remaining silent when questioned by the trial judge. The court concluded that "[a] defendant cannot be allowed to refuse to cooperate with his attorney and the trial court and then attempt to create an issue of ineffective counsel on the basis of his own refusal," and proceeded to deny the claim as being without merit.

Thomas argues that his personal conflict with Brawley and his "firm conflict" with the Public Defender's office, of which Brawley was a member, required appointment of private counsel. A review of the record reveals no constitutional error in denying the motion to withdraw and refusing to appoint other counsel.

■ Where the accused voices objections to appointed counsel, the trial court should inquire into the reasons for the dissatisfaction. *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973); *see also McKee v. Harris*, 649 F.2d 927, 933 (2d Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). Where the court's inquiry is thwarted by the defendant's voluntary conduct, however, the inquiry need only be as comprehensive as the circumstances permit. *Hudson v. Rushen*, 686 F.2d 826, 831 (9th Cir.1982), *cert. denied*, 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983). In *Hudson*, the court invited the defendant to state his reasons for desiring new counsel and found them to be without merit. The next day, the defendant refused to participate further in the trial and obstreperously departed from the courtroom. The court emphasized that the resulting breakdown in communication between the attorney and his client was caused by the defendant's voluntary conduct rather than by the trial court's failure to make an adequate inquiry into the underlying reasons for the conflict. *Id.; see Olsen v. Wainwright*, 565 F.2d 906, 907 (5th Cir.1978) (noting petitioner's failure to request another attorney or to proceed *pro se* in the face of trial court's questioning during hearing on motion to withdraw).

Immediately after the second meeting with defendant and six weeks prior to trial, Brawley filed a motion to withdraw as counsel. The motion asserted two grounds: (1) another public defender from Brawley's office had represented Thomas at a prior criminal trial in which Thomas criticized his counsel from the witness stand, and (2) Thomas' absolute refusal to communicate with Brawley regarding his upcoming trial. The state trial judge conducted a hearing on the motion during which Thomas refused to respond to questions from the bench. The trial judge's unsuccessful attempts to discern the cause of Thomas' dissatisfaction consisted of the following:

THE COURT: Why don't you ask Mr. Thomas to come up? Mr. Thomas, come up to the bench, please?

(The defendant approached the bench).

THE COURT: Mr. Thomas, the Public Defender has filed a motion to withdraw as your lawyer on the grounds that you have failed to cooperate with him. And it is also my understanding that you have been dissatisfied with all of the lawyers that have represented you in all of the cases here in the Tenth Circuit. Is there somebody that you wish to represent you or do you have some other plan about hiring a lawyer on your own to represent you? You are entitled to be represented by a lawyer. You are entitled to a court appointed lawyer. Obviously, you can't afford to hire your own, and we have done that. But you have expressed dissatisfaction with everybody that's tried to help you.

Now what do you propose about somebody to represent you?

You are not going to answer any of my questions, Mr. Thomas?

Has Mr. Brawley been over to see you about the case?

Do you want to represent yourself?

OK. Show the defendant refused to answer any questions or any inquiry about court appointed counsel.

The trial court then solicited suggestions from counsel present. The prosecutor, characterizing Thomas' conduct as "complete noncooperation," recommended denial of the motion to withdraw. The trial court, remarking that there did not seem to be any alternative, denied the motion after receiving Brawley's assurances that he would represent Thomas to the best of his ability. Thomas continued to refuse to communicate with Brawley throughout Brawley's representation of him at trial and sentencing. Brawley characterized Thomas' attitude as one of disinterest rather than hostility.

▮ Under those facts, the trial court cannot be constitutionally faulted either procedurally or substantively in refusing to appoint other counsel. An indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him, *see Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), nor to demand a different appointed lawyer except for good cause. *United States v. Young*, 482 F.2d at 995. Good cause for substitution of counsel cannot be determined "solely according to the subjective standard of what the defendant perceives." *McKee v. Harris*, 649 F.2d at 932. A defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient. *Id. See also Hutchins v. Garrison*, 724 F.2d 1425, 1430–31 (4th Cir.1983) (rejecting ineffective assistance of counsel claim where defendant's trial counsel had moved to withdraw due to lack of communication with defendant allegedly stemming from defendant's distrust based on defense counsel's earlier service as assistant district attorney), *cert. denied*, — U.S. —, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984). A defendant, by unreasonable silence or intentional lack of cooperation, cannot thwart the law as to appointment of counsel.

Petitioner relies heavily on *Brown v. Craven*, 424 F.2d 1166 (9th Cir.1970).

There the court held that "to compel one charged with grievous crime to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive him of the effective assistance of any counsel whatsoever." *Id.* at 1170. A public defender had been appointed to represent the defendant on a murder charge. A disagreement between the defendant and his counsel led to an absence of communication. The defendant himself filed four motions requesting that some other attorney be appointed to represent him which the trial court summarily denied, despite the public defender's representation to the court that he could not prepare effectively without defendant's cooperation. The defendant was subsequently convicted. The Ninth Circuit, emphasizing the total lack of cooperation and communication between the defendant and his counsel, held that the trial court's failure to make adequate inquiry into the cause of defendant's dissatisfaction violated his right to effective assistance of counsel. *Id.* at 1170; *see also United States v. Williams*, 594 F.2d 1258, 1260 (9th Cir.1979) (following *Brown* ).

*Brown* presents an entirely different case. The defendant in *Brown* actively sought to obtain new counsel by filing numerous motions himself and even by voicing his displeasure with his representation in open court. 424 F.2d at 1169. Thomas never broke his silence. Moreover, the trial court in *Brown* "summarily denied" all motions for change of counsel without making any inquiry into the causes for the defendant's objections, while the trial court in the case before us questioned Thomas in open court regarding his wishes to no avail. Even the *Brown* court, after making its broad statements regarding defendant's rights to effective assistance of counsel and reversing for a new trial with competent counsel, placed a condition on its remand order that the defendant "not demonstrate obstinance, recalcitrance, or unreasonable contumacy." *Id.* at 1170. Interestingly, after retrial of the *Brown v. Craven* petitioner, the California Court of Appeal held that the defendant's lack of

confidence in his attorney was indeed a product of his own obstinance, recalcitrance, and unreasonable contumacy. *People v. Brown*, 26 Cal.App.3d 825, 835, 102 Cal.Rptr. 518, 524 (Cal.Ct.App.1972); *see also Hudson v. Rushen*, 686 F.2d at 831.

■ Upon a review of the course of events leading up to the motion to withdraw and the events at the hearing before the trial judge, we conclude that Thomas' intractable silence amounted to a waiver of any change in counsel to which he may otherwise have been entitled. The Supreme Court has held that a criminal defendant has a constitutional right to waive counsel. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Given that a criminal defendant may waive his constitutional right to counsel altogether, at some point a criminal defendant can be deemed to have waived to a certain extent his constitutional right to effective assistance by virtue of his unreasonable refusal to communicate with his attorney. *See United States v. Moore*, 706 F.2d 538, 540 (5th Cir.1983) (finding "a persistent, unreasonable demand for dismissal of counsel [to be] the functional equivalent of a knowing and voluntary waiver of counsel"), *cert. denied*, —— U.S. ——, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983).

At the state post-conviction hearing, Thomas was questioned regarding the lack of cooperation. He referred to "difficulties in communicating" with two other attorneys from the Tenth Judicial Circuit Public Defender's Office who had represented him in two prior criminal proceedings. According to Thomas, those attorneys failed to investigate potential alibi witnesses he had suggested to them and their questioning of witnesses at trial was inadequate. Thomas stated that his refusal to cooperate with Brawley was a result of these prior experiences, which led him to distrust everyone in the public defender's office. Thomas further indicated that he refused to answer the trial judge's questions because his unsuccessful attempts to have public defenders dismissed in prior cases convinced him

of the futility of communicating his objections to the judge.

At the time of his trial, however, Thomas had the limited choice of either proceeding to trial with his appointed counsel or making known to the court his objections to that counsel when given the opportunity to do so. Because this choice did not place Thomas in a "dilemma of constitutional magnitude," *McKee*, 649 F.2d at 931, Thomas' voluntary choice to remain silent effectively waived any right to more effective counsel than was possible under the circumstances.

■ In any event, good cause did not exist for assignment of new counsel. Even assuming that Thomas had legitimate complaints about the representation he had previously received from two other attorneys from the public defender's office, Brawley had never represented Thomas before. Thomas' refusal to cooperate with Brawley commenced with their initial meeting, before Brawley had had any opportunity to investigate leads or question witnesses. Moreover, Thomas' obstinate refusal to respond to the court's questions gave no indication that he would cooperate with any other lawyer the court could have appointed, nor that he desired to proceed *pro se*.

■ This determination does not, however, end the inquiry. Even a criminal defendant's complete noncooperation does not free his lawyer to abdicate his professional responsibility to represent his client in the best way possible under the circumstances. In deciding an ineffectiveness claim, we must judge "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984). A criminal defendant's unreasonable refusal to communicate or cooperate with his attorney is one of the "circumstances" that must be considered in determining whether an attorney's assistance was reasonably effective. *Id.* at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695 ("The reasonableness of counsel's actions may be determined or

substantially influenced by the defendant's own statements or actions."). *See Morris v. Slappy*, 461 U.S. 1, 9, 12, 103 S.Ct. 1610, 1615, 1616, 75 L.Ed.2d 610 (1983); *Hudson v. Rushen*, 686 F.2d at 831–32.

■ To prevail on his ineffective assistance claim, Thomas must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Washington*, 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Thomas identified two specific areas of inquiry that Brawley might have been able to pursue had he had input from Thomas. Mrs. Anderson had testified at trial that her assailant had scars or welts on his legs, and police investigators testified that during their interrogation of Thomas they noticed welts on his legs. Cody Martin, another neighbor of Thomas', testified at trial that on the morning after the Anderson murder Thomas spoke of making a "good hit" on a place the night before and of shooting a dog. The Andersons' dog was shot by the intruder. Thomas contends an effective attorney would have pursued the questions of whether Thomas had welts on his legs and when and if Thomas ever told Cody Martin about shooting a dog. These two specific omissions alleged by Thomas were directly attributable to Thomas' silence. Given that silence, it is difficult to perceive how Brawley could have uncovered the information elsewhere while conducting a reasonable investigation of the case.

A review of the record reveals that counsel's performance was reasonably effective under the circumstances. Brawley filed pretrial motions to suppress statements and for change of venue, presented witnesses at hearings on those motions, questioned potential jurors at *voir dire*, used 18 of his 28 available preemptory challenges and challenged several jurors for cause, made objections at trial, and cross-examined several of the State's witnesses. He also presented two defense witnesses, one of whom testified as an expert concerning potentially exculpatory scientific evidence.

At the state post-conviction hearing, Brawley testified that he had continued to prepare the case in spite of his client's noncooperation and that he was familiar with the State's case going into the trial. He stated that he had been surprised only once by evidence presented during the State's case, and that he had rebutted that evidence with his expert witness. Brawley had interviewed Thomas' wife in an attempt to establish an alibi, but decided against calling her because of doubts as to her ability to be a convincing witness. While acknowledging that Thomas' silence impaired his ability to represent him as well as he could have, Brawley stated he thought he had "at least a chance going into the final arguments of actually getting an acquittal in the case." We conclude that Thomas has not established that, given the circumstances of the case, his attorney failed to provide reasonably effective assistance of counsel.

We have examined this case to determine if the manifest ends of justice might require relief. This is not such a case. The case against Thomas was largely circumstantial, but the evidence was reasonably strong. The facts Thomas claims his counsel should have developed would merely have been additional circumstances for the jury to consider, and were not necessarily exculpatory, even if they were true. The district court properly denied relief on Thomas' ineffective assistance of counsel claim.

*Restriction of Mitigating Evidence*

■ Thomas argues that he was denied a fair and individualized capital sentencing by the preclusion of evidence of nonstatutory mitigating factors as a result either of the operation of state law or the inability of his counsel to be effective because of his counsel's belief that Florida law barred such evidence. The confusion in Florida as to whether nonstatutory mitigating circumstances could be considered under Florida law has been well documented. *See Hitchcock v. Wainwright*, 745 F.2d 1332, 1335–37 (11th Cir.1984) (discussing *Proffitt v. Florida*, 428 U.S. 242, 250 n. 8, 96 S.Ct.

2960, 2965 n. 8, 49 L.Ed.2d 913 (1976); *Cooper v. State,* 336 So.2d 1133 (Fla.1976), *cert. denied,* 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977) and·*Songer v. State,* 365 So.2d 696 (Fla.1978), *cert. denied,* 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979)); *see also Songer v. Wainwright,* — U.S. —, —————, 105 S.Ct. 817, 819–22, 83 L.Ed.2d 809, 812–14 (1985) (Brennan, J., dissenting from denial of certiorari).

Since *Songer,* this Court has heard numerous petitioners claiming, like Thomas, that their death penalty sentences were unconstitutional under *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) because their sentencing hearings occurred in Florida before the clarification of *Songer. See, e.g., Hitchcock v. Wainwright,* 745 F.2d 1332 (11th Cir.1984), *reh'g en banc granted,* 745 F.2d 1348 (11th Cir. 1985); *Foster v. Strickland,* 707 F.2d 1339, 1346–47 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2375, 80 L.Ed.2d 847 (1984); *Ford v. Strickland,* 696 F.2d 804, 813 (11th Cir.) (*en banc*), *cert denied,* — U.S. —, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983); *Proffitt v. Wainwright,* 685 F.2d 1227, 1238–39 (11th Cir.1982), *cert. denied,* — U.S. —, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983); *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir.1978), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979). *See also Songer v. Wainwright,* 756 F.2d 800 (11th Cir.1985), *reh'g en banc granted,* 756 F.2d 1482 (11th Cir.1985).

We have consistently denied relief under this claim where the record reflects that any confusion in the Florida law did not appreciably affect a capital sentencing proceeding. In this case, the district court had before it the transcript of the state postconviction hearing, a developed factual record from which it could be determined that Florida law had little, if any, effect on defense counsel's decisions at the sentencing. *See Francois v. Wainwright,* 763 F.2d 1188, 1190–1191 (11th Cir.1985) (denying stay of execution pending *en banc* decisions in *Hitchcock* and *Songer,* where trial judge expressly instructed the jury that there were no limitations on mitigating circumstances and where proffered evidence of nonstatutory mitigating circumstances would have had no effect on jury).

Thomas' sentencing hearing was held in April 1977 between the *Cooper* and *Lockett* decisions. The State presented law enforcement personnel who related Thomas' convictions for prior offenses of armed robbery, assault, battery, and sexual battery. Thomas' counsel presented only one witness, a police detective who had interrogated Thomas. Over the prosecutor's objection that the detective's testimony covered matters not enumerated as mitigating circumstances in the death penalty statute, the detective related that Thomas had spoken to him for fifteen to twenty minutes of being beaten by a prison guard as a youth until he could not walk while being held at a juvenile detention facility. The detective testified that Thomas had tears in his eyes when telling the story.

Thomas suggests that had his attorney undertaken a thorough investigation, he would have discovered substantial evidence regarding the hardships of his upbringing, which he terms mitigating. More specifically, he claims the evidence would have shown that during the first six years of his life he lived with his mother and nine brothers and sisters in a two-room house, that he was forced to seek food wherever he could find it, that while looking through discarded items behind a grocery store he was arrested, kicked, and beaten by white policemen. At the age of six, he witnessed a white doctor rape his mother. At the age of eight, he and his younger brother were incarcerated at the county jail for not going to school. Between the ages of eight and thirteen, he was kept in a foster home where he worked from sunrise to sunset picking cotton and digging ditches and was frequently beaten by his foster parents when he failed to work as long or as hard as required. Sent to a reformatory school at fifteen, he ran away with a friend, who was subsequently drowned by law enforcement officers. The psychological effects of these events, Thomas claims, reduced his ability to cope rationally with the stresses of life, and he argues that his counsel

should have introduced and developed these facts at his sentencing hearing.

There is nothing in this record to show that the trial court would have excluded any mitigating evidence proffered. The lone witness put on by the defense testified that Thomas had revealed to him that he had been severely beaten during his youth. The court allowed this testimony over the prosecutor's objection that the defense was limited to the statutory mitigating circumstances, stating that the testimony was admitted "for the purpose of showing maybe he was under extreme mental emotional disturbance because of these acts." The mere fact that some background evidence was admitted does not justify the assumption that the trial court would have admitted all nonstatutory evidence. The offer and admission of this testimony, however, renders the record neutral with respect to whether the trial court would have excluded proffered nonstatutory mitigating evidence and whether trial counsel thought he could introduce it.

More importantly, the testimony of Thomas' counsel at the post-conviction hearing indicates that his decision not to introduce evidence of Thomas' background was based on strategic considerations, and not on his perception of the effect of Florida law. Admittedly, at the state post-conviction hearing defense counsel recalled that his understanding of Florida law at the time of the sentencing was that he was limited to the mitigating factors enumerated in the statute. But when questioned whether that understanding dictated his preparation or investigation of potentially mitigating evidence, defense counsel explained that two other factors were operating upon him in the penalty phase: his desire to minimize the impact of Thomas' unsavory background and, more importantly, his choice to remain consistent in the eyes of the jury by continuing his guilt phase strategy of appealing to the concept of reasonable doubt that Thomas had committed the crimes rather than trying to play on the jury's sympathy.

The transcript of the sentencing hearing reflects Thomas' counsel's emphasis on the jury's residual doubt as to whether Thomas was indeed the murderer of Charles Anderson. He stressed inconsistencies in the physical and testimonial evidence against Thomas. Conceding that the jury had found that there was no reasonable doubt that Thomas had committed the murder, defense counsel pointed out the circumstantial nature of the case against Thomas and the unique finality of the death penalty, and argued:

I would submit you should not have any doubt about recommending death to just possibly an innocent man.

As defense counsel testified at the post-conviction hearing, this strategic choice was his attempt to maintain his credibility before the jury:

The jury did not agree with my summation of the evidence and my view of the evidence and they found him guilty, therefore it seemed to me that since mitigation or sympathy would not really turn the tide for him, and to keep my credibility intact, I wanted to suggest to the jury that maybe you're convinced beyond a reasonable doubt, but you shouldn't be convinced beyond all doubt because there was no direct testimony against Mr. Thomas, there was no eyewitness testimony, no fingerprint testimony, there was positive scientific evidence that at least circumstantially indicated he was not the man.... And I, frankly, did not believe that changing horses and attempting to go the full route with mitigation or sympathy attack would help Mr. Thomas, and we had very little to work with anyway.

Finally, defense counsel testified:

My main pitch to the jury was that maybe you have made a mistake, if this man is allowed to live, maybe some day evidence will come to light showing he didn't do it; and are you so sure of your verdict that you have got to go that next awful step and recommend death.

Thomas' counsel's testimony clearly demonstrates that his choice not to introduce

background evidence was primarily a matter of strategy. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires us to "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at ——, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Confronted with his client's stubborn silence, convinced of the necessity to advance arguments at sentencing consistent with those he advanced at the guilt phase, and uncertain of the jury's reaction to the circumstances of his client's background, Thomas' public defender chose to forsake evidence of Thomas' background and to rely on arguments stressing the circumstantial nature of the case against his client. In light of these circumstances, that decision did not fall below the "objective standard of reasonableness" set forth by the Supreme Court in *Washington*. 466 U.S. at ——, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

The district court did not err in holding that Thomas failed to demonstrate any significant causal relationship between counsel's reliance on Florida law interpreting the statute and counsel's determination not to introduce the background evidence.

*Brown Issue*

▮▮ Thomas raises the so-called *Brown* issue decided in *Ford v. Strickland*, 696 F.2d 804 (11th Cir.) (*en banc*), *cert. denied,* —— U.S. ——, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983), and suggests we reconsider the decision based on a constitutional argument mentioned in a concurring opinion. *Ford*, 696 F.2d at 824, 832–33 (Tjoflat, J., concurring). The *Brown* issue involved a claim by Thomas and 122 other death row inmates that the Florida Supreme Court had examined non-record information during its appellate review of their sentences. *See Brown v. Wainwright*, 392 So.2d 1327 (Fla.), *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). In *Ford*, the *en banc* Court held that the Florida Supreme Court's decision that the material should not be used, its statement that it was not used, and the rejection of the notion that the material affected the judgment of that court's judges "ends the matter when addressed at the constitutional level." *Ford*, 696 F.2d at 811. This Court has consistently followed *Ford* in rejecting constitutional attacks on the Florida Supreme Court's practice. *See Smith v. Wainwright*, 741 F.2d 1248, 1261 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1855, 85 L.Ed.2d 151 (1985); *Dobbert v. Strickland*, 718 F.2d 1518, 1521 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3591, 82 L.Ed.2d 887 (1984); *Shriner v. Wainwright*, 715 F.2d 1452, 1456–57 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1328, 79 L.Ed.2d 723 (1984). The petitioner's argument in effect concedes that this case is controlled by *Ford*. Neither the district court nor this panel is at liberty to reconsider *Ford*, which establishes the controlling law on this issue.

*Arbitrariness of the Death Penalty in Florida*

▮▮ Thomas argues that the Florida death penalty is unconstitutionally applied due to discrimination on the basis of race, sex, and socioeconomic status, and arbitrarily applied on the basis of geography. He claims the district court erred in failing to grant an evidentiary hearing, specific discovery, and expenses for expert assistance and witnesses. In support of his claim, Thomas proffers the same type of statistical studies rejected by this Court in *Henry v. Wainwright*, 743 F.2d 761, 762 (11th Cir.1984); *Washington v. Wainwright*, 737 F.2d 922, 923 (11th Cir.1984); *Sullivan v. Wainwright*, 721 F.2d 316 (11th Cir.1983), *application for stay denied,* 464 U.S. 109, 104 S.Ct. 450, 78 L.Ed.2d 210 (1983); and *Adams v. Wainwright*, 709 F.2d 1443, 1449 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). The Supreme Court has likewise indicated that this claim is without merit. *Wainwright v. Ford*, —— U.S. ——, 104 S.Ct. 3498, 82 L.Ed.2d 911 (1984) (denying state's application to vacate stay on other grounds); *Wainwright v. Adams*, —— U.S. ——, 104 S.Ct. 2183, 80 L.Ed.2d 809 (1984) (vacating stay of execu-

tion); *Sullivan v. Wainwright*, 464 U.S. 109, 104 S.Ct. 450, 78 L.Ed.2d 210 (1983) (denying stay of execution). The district court properly denied Thomas' requests for an evidentiary hearing and claim for relief on this issue.

AFFIRMED.