[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14761
Non-Argument Calendar

_____

D.C. Docket No. 2:18-cr-00277-ALB-SMD-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KELVIS JERMAINE COLEMAN,
a.k.a. Bullet Head,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(July 6, 2021)

Before JILL PRYOR, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Kelvis Coleman appeals his convictions by guilty plea for one count of

distributing over 50 grams of a mixture and substance containing a detectable

amount of methamphetamine and one count of distributing over 50 grams of methamphetamine, both in violation of 21 U.S.C. § 841(a)(1). Coleman argues that the district court abused its discretion in denying his motion for new appointed counsel because communication between him and appointed counsel Richard Keith had broken down completely. Next, Coleman argues that the district court committed plain error under Fed. R. Crim. P. 11 ("Rule 11") by failing to ensure his understanding that a 25-year mandatory minimum sentence applied to one of his offenses before it accepted his guilty plea. Finally, Coleman argues that the district court abused its discretion in denying his motion to withdraw his plea. We address each issue in turn.

## I.

Where a district court inquires into a criminal defendant's motion for new counsel, we review the district court's ruling for abuse of discretion. *United States v. Calderon*, 127 F.3d 1314, 1343 (11th Cir. 1997), *modified on other grounds by United States v. Toler*, 144 F.3d 1423 (11th Cir. 1998). An indigent criminal defendant for whom counsel has been appointed does not have a right to demand different appointed counsel except for good cause, e.g., a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict. *United States v. Joyner*, 899 F.3d 1199, 1205 (11th Cir. 2018). In determining whether a district court abused its discretion, we

consider, in relevant part, whether the conflict between the defendant and his counsel was so great that it resulted in a "total lack of communication between them, thereby preventing an adequate defense." *Calderon*, 127 F.3d at 1343. Further, even if we find that a district court abused its discretion in denying a defendant's motion for new counsel, the defendant must demonstrate that he was somehow prejudiced by his counsel's continued representation. *Id.*

A defendant's general loss of confidence or trust in his counsel, standing alone, is not good cause for requesting new appointed counsel. *Joyner*, 899 F.3d at 1206. Further, good cause "cannot be determined solely according to the subjective standard of what the defendant perceives," and a defendant "cannot thwart the law as to appointment of counsel" by his "unreasonable silence or intentional lack of cooperation." *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) (quotation marks omitted).

In *Joyner*, the defendant argued to the district court that there was a complete breakdown in communication between him and his appointed counsel, and the district court held three separate hearings allowing Joyner to explain his concerns. *Joyner*, 899 F.3d at 1205. We noted Joyner's arguments on appeal that he clearly lacked faith in his counsel's ability to represent him and that they had differences about the strategy for his defense every time they met. *Id.* We held, however, that the district court did not abuse its discretion in concluding that there

3

was not a total lack of communication between Joyner and his counsel preventing an adequate defense. *Id.* We noted that the district court correctly explained that Joyner's counsel was obligated to challenge his positions that did not make sense or were not relevant because he was sworn to represent Joyner and was looking out for his best interests. *Id.* at 1206.

Similarly, in *United States v. Amede*, the defendant and his counsel informed the district court of a breakdown in communication between them, which the court determined was caused by: (1) Amede's refusal to meet, speak, or prepare for sentencing with his counsel; and (2) counsel's refusal to advance Amede's *pro se* arguments. 977 F.3d 1086, 1106 (11th Cir. 2020). We first held that Amede "was not entitled to unilaterally refuse to communicate with his appointed counsel and then seek new appointed counsel." *Id.* We then held that counsel's refusal to adopt Amede's frivolous legal positions did not constitute good cause for replacement, noting that Amede did not challenge on appeal the district court's findings that the arguments his counsel refused to present were meritless. *Id.*

The district court did not abuse its discretion in denying Coleman's motion to appoint new counsel because good cause did not exist to replace Keith, as the record does not reflect that whatever conflict they had was so great that it resulted in a total lack of communication between them. *See Calderon*, 127 F.3d at 1343; *Joyner*, 899 F.3d at 1205. The record instead reflects that Coleman had lost

4

confidence and trust in Keith based on his personal perceptions of him and his representation, including his refusal to file motions he does not dispute on appeal were meritless. *See Joyner*, 899 F.3d at 1205-06; *Thomas*, 767 F.2d at 742; *see also Amede*, 977 F.3d at 1106. The record also supports a finding that Coleman's perceptions were not unique to Keith, as he also leveled accusations of racism against a judge and also accused his previous appointed counsel of selling him out, and the district court noted at one point that Coleman had difficulty communicating with lawyers. And while Keith did file two motions to withdraw due to a complete breakdown in communication, he filed them in both instances because Coleman refused to meet with him. *See Thomas*, 767 F.2d at 742; *Amede*, 977 F.3d at 1106. Further, Keith filed his first motion based on Coleman's misunderstanding that Pitters still represented him, and after filing his second motion, stated he no longer believed that Coleman wished to fire him.

The district court thus did not abuse its discretion in denying Coleman new counsel, and we consequently need not decide whether Coleman was prejudiced by Keith's continued representation. *See Calderon*, 127 F.3d at 1343. We accordingly affirm as to this issue.

## II.

We ordinarily review *de novo* the voluntariness of a guilty plea. *United States v. Bushert*, 997 F.2d 1343, 1352 (11th Cir. 1993). However, when a

5

defendant neither objects to plea proceedings nor moves to withdraw the plea in the district court, we review for plain error only. *United States v. Monroe*, 353 F.3d 1346, 1349 (11th Cir. 2003). We may reverse an error that was plain and that affects the defendant's substantial rights, provided it also seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Innocent*, 977 F.3d 1077, 1084-85 (11th Cir. 2020). An error is plain if it is clear or obvious, i.e., if precedent from the Supreme Court or this Court or the explicit language of a statute or rule directly resolves the issue. *Id.* at 1085.

A guilty plea involves relinquishment of several constitutional rights and privileges. *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018). It must therefore be entered voluntarily and knowingly. *Id.* A defendant seeking a reversal of his conviction on the ground that the district court committed plain error in accepting his guilty plea must show a reasonable probability that, but for the error, he would not have pled guilty. *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). We may review the whole record when considering the effect of any error on substantial rights. *Monroe*, 353 F.3d at 1350.

A court accepting a plea of guilty must comply with the core concern of Rule 11 that the defendant knows and understands the consequences of his guilty plea. *United States v. Hernandez-Fraire*, 208 F.3d 945, 949 (11th Cir. 2000). Accordingly, the court must inform the defendant of, and determine that the

defendant understands, any mandatory minimum penalty.  Fed. R. Crim. P. 11(b)(1)(I).

In *United States v. Gandy*, the defendant was erroneously advised by the government and a magistrate judge that the maximum penalty for his offense would be ten years' imprisonment.  710 F.3d 1234, 1240 (11th Cir. 2013).  At sentencing, the district court thoroughly explained that that was error and that Gandy's mandatory minimum sentence was 15 years.  *Id.*  The district court asked Gandy if he had any questions and then asked if he would like to enter the same guilty plea; Gandy responded that he did not wish to withdraw his plea.  *Id.*  We stated that the magistrate judge's failure to inform Gandy of the correct mandatory minimum sentence for his offense constituted a failure to address his knowledge and understanding of the consequences of his guilty plea—a core concern of Rule 11.  *Id.*  However, we affirmed and held that, although there was an obvious error, it was harmless because it did not affect Gandy's substantial rights, i.e., he could not show a reasonable probability that, but for the error, he would not have entered the plea.  *Id.* at 1240-41.  We also noted that, "[i]n any event, the district court was bound to apply the statutory mandatory minimum sentence to Gandy."  *Id.* at 1241.

In *United States v. Bejarano*, the district court erred by failing to inform the defendant, during the plea colloquy, of a specific mandatory minimum term of supervised release.  249 F.3d 1304, 1306 (11th Cir. 2001).  However, the

defendant's presentence investigation report ("PSI") noted that a five-year minimum term of supervised release was required by statute, and Bejarano did not dispute that term in any of his PSI objections or at the sentencing hearing. *Id.* In holding that Bejarano's substantial rights were not affected, we noted that "Bejarano's PSI stated that a five-year period of supervised release was required by statute, and Bejarano failed to object to the PSI at sentencing." *Id.* at 1307.

The district court did not plainly err because, while it committed an error by failing to ensure Coleman's understanding that he was subject to a 25-year statutory minimum on one of his offenses, and that error was plain in light of Rule 11(b)(1)(I), Coleman cannot show that the error affected his substantial rights because he cannot show a reasonable probability that, but for the error, he would not have pled guilty. *See Innocent*, 977 F.3d at 1084-85; Fed. R. Crim. P. 11(b)(1)(I); *Dominguez Benitez*, 542 U.S. at 83. While Coleman argues extensively that his motion to withdraw demonstrated such a reasonable probability, Coleman did not state as grounds for withdrawal—either in the motion or the extensive proceedings that followed—that he was misinformed as to what the applicable statutory range of imprisonment was. Even after Coleman's PSI made clear to him the applicable mandatory minimum, he failed to object to the PSI or argue at any point in the withdrawal proceedings that he was misinformed as to the applicable statutory range of imprisonment. *See Bejarano*, 249 F.3d at

8

1306-07. Further, Coleman's insistence on going to trial does not support a finding that his substantial rights were affected by the district court's statutory-minimum error, as nothing in the record suggests that that insistence related to the statutory penalties applicable to his offense. Thus, there is nothing in the record to suggest that but for the error he alleges on appeal, Coleman would not have pled guilty. *See Dominguez Benitez*, 542 U.S. at 83; *Monroe*, 353 F.3d at 1350.

We accordingly affirm as to this issue.

## III.

We review for abuse of discretion the district court's denial of a defendant's motion to withdraw his guilty plea. *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). "The district court may be reversed only if its decision is arbitrary or unreasonable." *Id.*

A defendant may withdraw a guilty plea before sentencing if he can show a fair and just reason for requesting the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). In determining whether the defendant has met this burden, we consider: (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea. *Buckles*, 843 F.2d at 471-72. The good faith, credibility and weight of a defendant's assertions supporting his motion are issues for the trial

9

court to decide. *Id.* at 472. Further, there is a strong presumption that the statements made during the plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). A defendant bears a heavy burden to show that statements made under oath were false. *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

In determining whether close assistance of counsel was available, we have addressed the district court's rejection of the defendant's assertion that he pled guilty under duress from his counsel. *Buckles*, 843 F.2d at 472. Noting that all guilty pleas are the result of some pressures or influences on the defendant's mind, we explained that a defendant "cannot complain of coercion where his attorney, employing his best professional judgment, recommends that the defendant plead guilty." *Id.*

In addressing conservation of judicial resources, we have noted the defendant's conduct, which caused delay in finalizing his case. *Id.* at 474. In addressing prejudice to the government, we have explained that the district court "was justified in considering the time, money, and effort the government would have to devote to reassembling witnesses and evidence that were allowed to scatter after the acceptance of the guilty plea." *Id.*

The district court did not abuse its discretion in denying Coleman's motion to withdraw his guilty plea because Coleman did not show a fair and just reason for

doing so under the applicable factors. *See Buckles*, 843 F.2d at 471-72; Fed. R. Crim. P. 11(d)(2)(B). The record supports a finding that Coleman had close assistance of counsel available, as Coleman emphasized that Keith had urged him to plead guilty multiple times and even acknowledged that Keith was a good lawyer; and at the plea colloquy, Coleman testified that he had the opportunity to talk with Keith about the charges against him and that they had reviewed the Sentencing Guidelines and their application to his case. And the district court properly rejected Coleman's argument that Keith coerced him into pleading guilty, because Keith employed his best professional judgment in urging him to do so in light of the extensive evidence against him, an assessment even subsequent attorney Powell agreed with while arguing that Coleman should be allowed to withdraw his plea. *Buckles*, 843 F.2d at 472. There is also a strong presumption that statements made during the plea colloquy are true, and Coleman stated and reiterated during the plea colloquy that no one forced him to plead guilty and that he was doing so because he was guilty. *Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168.

Further, the district court properly considered Coleman's conduct in addressing judicial resources, as it noted that Coleman's case was in an advanced procedural posture when he decided to plead guilty. *Buckles*, 843 F.2d at 474. Similarly, the court properly considered the time, money, and effort the

11

government would have to devote to reassembling witnesses in considering whether it would be prejudiced by allowing Coleman to withdraw his guilty plea. *Buckles*, 843 F.2d at 474.

Finally, the timing of Coleman's motion arguably supports a finding that he pled guilty as a means of testing the weight of his potential sentence. S*ee Gonzalez-Mercado*, 808 F.2d at 801. Indeed, Coleman did not move to withdraw his plea until two months after its acceptance and after the probation officer prepared his PSI.

We accordingly affirm.

**AFFIRMED.**

12