[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-15127
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 8, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cr-00248-SDM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NEY AYBAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 8, 2011)

Before EDMONDSON, MARTIN, and KRAVITCH, Circuit Judges.

PER CURIAM:

Ney Aybar appeals his conviction and 131-month sentence for conspiracy to possess with intent to distribute cocaine, 21 U.S.C. § 846. Aybar argues that: (1) defense counsel was ineffective at various stages of his proceedings before the district court; (2) the evidence was insufficient to convict him as charged; (3) the district court abused its discretion in admitting evidence of his prior drug trafficking activities; (4) the district court abused its discretion in admitting co-conspirators' out-of-court statements without assessing their admissibility under hearsay rules; (5) the district court abused its discretion in denying his motion for substitute counsel; and (6) his sentence was unreasonable. After careful review of the record and the parties' briefs, we affirm Aybar's conviction and sentence.

I.

Aybar first argues that defense counsel, for a number of reasons, was ineffective at various stages of his proceedings before the district court. Where appropriate, we will review claims of ineffective assistance of counsel de novo as mixed questions of law and fact. Caderno v. United States, 256 F.3d 1213, 1216–17 (11th Cir. 2001). The Supreme Court has explained, however, that in most cases the record will be inadequate to raise an ineffective-assistance claim on

2

direct appeal because the trial evidence would be devoted to guilt-or-innocence issues, as opposed to the reasoning behind counsel's actions. Massaro v. United States, 538 U.S. 500, 504–05, 123 S. Ct. 1690, 1694 (2003). As such, the record "may contain no evidence of alleged errors of omission, much less the reasons underlying them." Id. at 505, 123 S. Ct. at 1694. Therefore, as a general matter, "an ineffective assistance of counsel claim is properly raised in a collateral attack on the conviction under 28 U.S.C. § 2255," as opposed to direct appeal. United States v. Merrill, 513 F.3d 1293, 1308 (11th Cir. 2008) (quotation marks and alteration omitted). Here, the majority of Aybar's ineffective-assistance claims allege errors of omission, and the record provides little insight into defense counsel's tactical justifications, if any, for these omissions.[1] Thus, we decline to reach the merits of Aybar's ineffective-assistance challenge.[2]

---

[1] Specifically, Aybar contends that his trial counsel was ineffective for failing to: (a) conduct an adequate pretrial investigation of potentially exculpatory evidence; (b) communicate with him about the case; (c) obtain translations of trial recordings; (d) move to suppress questions related to a traffic stop in North Carolina; (e) submit proposed voir dire questions or inquire into juror bias; (f) object to Rule 404(b) evidence; (g) effectively cross-examine the government's witnesses at trial; (h) move for judgment of acquittal; (i) submit jury instructions; (j) move for a new trial following the verdict; (k) object to the PSI; (l) file a sentencing memorandum; (m) support Aybar's motion for new counsel; and (n) advocate for a guideline reduction or variance based on his minimal role.

[2] The government argues that the record is sufficiently developed for this Court to reject many of Aybar's ineffective-assistance claims on the merits. Given that most of these claims allege errors of omission, we are not convinced that the record is adequately developed to decide them on the merits in this direct appeal. However, even if the record were sufficient to adjudicate some of these claims, the government concedes that others need further development, and we decline to consider this challenge piecemeal.

II.

We next consider Aybar's argument that the evidence at trial was insufficient to support his conviction. To support a conviction for conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: (1) a conspiracy existed; (2) the defendant knew of the conspiracy; and (3) he voluntarily joined the conspiracy. United States v. Freyre-Lazaro, 3 F.3d 1496, 1502 (11th Cir. 1993). Ordinarily, we review the sufficiency of the government's evidence at trial de novo as a question of law, inquiring whether a reasonable jury could find the defendant guilty based on the evidence presented. United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009). But where, as here, a defendant fails to timely move for judgment of acquittal, we will review the evidence only for a manifest miscarriage of justice. United States v. Edwards, 526 F.3d 747, 755–56 (11th Cir. 2008). Under this standard, we will not set aside a conviction unless "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." Id. (quotation marks omitted).

We conclude that Aybar's conviction was not "shocking." Multiple government witnesses testified to facts that established the elements of the § 846 conspiracy offense for which he was charged. Specifically, these witnesses

testified to Aybar's involvement in a group that attempted to purchase kilogram quantities of cocaine from undercover law enforcement officers in 2008. In addition, several government witnesses, including indicted co-conspirators, testified about drug trafficking activities that Aybar knowingly performed on behalf of this group prior to the undercover operation.

The jury apparently found this testimony credible, and that credibility determination must stand unless the testimony is incredible as a matter of law. See United States v. Steele, 178 F.3d 1230, 1236 (11th Cir. 1999). Testimony is legally "incredible" only if it is "unbelievable on its face" and relates to facts that the witness "could not have possibly observed or events that could not have occurred under the laws of nature." Id. (quotation marks omitted). Further, when a criminal defendant chooses to testify on his own behalf, his statements, "if disbelieved by the jury, may be considered as *substantive evidence* of [his] guilt," meaning that the jury may conclude that the opposite of his testimony is true. United States v. Brown, 53 F.3d 312, 314 (11th Cir. 1995).

Aybar has provided no basis for holding that these witnesses were incredible as a matter of law. To the contrary, the testimony of the government's witnesses was generally consistent, and it directly contradicted Aybar's testimony that he did not know that he was participating in his co-conspirator's drug

5

trafficking scheme. As stated, the jury was entitled to disbelieve Aybar's testimony on his own behalf and construe it as substantive evidence of his guilt. See Brown, 53 F.3d at 314. Thus, the jury verdict did not represent a manifest miscarriage of justice.

## III.

Aybar argues that the district court abused its discretion in admitting evidence at trial of his prior drug trafficking activities. We ordinarily review evidentiary rulings, including the admission of evidence under Federal Rule of Evidence 404(b), for abuse of discretion. See United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003). However, where, as here, a party fails to object to the admission of evidence at trial, we review only for plain error. Id. at 1289.[3] Under the plain error standard, reversal is warranted only where the defendant demonstrates: "(1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." Id. (quotation marks omitted). "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme

---

[3] Aybar filed a motion in limine to exclude some of this evidence, but did not renew his objection at trial, and therefore failed to preserve the issue. See United States v. Gari, 572 F.3d 1352, 1356 n.2 (11th Cir. 2009).

Court or this Court directly resolving it." United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003).

Under Rule 404(b), evidence of a prior bad act may not be admitted as proof of bad character. Of course, this Rule does not bar the admission of evidence of the charged criminal conduct at issue during the trial. See United States v. Lane, 323 F.3d 568, 579 (7th Cir. 2003). Similarly, Rule 404(b) does not apply to evidence of uncharged criminal activity that is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007).

As developed at trial, from 2003 through 2007, Aybar engaged in prior drug trafficking activity on behalf of the same individuals with whom he was arrested during the 2008 undercover operation. The indictment did not allege either a start date or any specific acts as part of the charged conspiracy. The government argues that as a result, the evidence that Aybar now characterizes as evidence of prior criminal conduct was actually evidence of the charged conspiracy itself, and therefore not subject to Rule 404(b). But, even assuming that the evidence was uncharged conduct, we cannot say that the district court plainly erred in admitting

7

the evidence. Given the similarity and relatively short time period between Aybar's prior drug trafficking activity and the scheme to purchase cocaine that resulted in his arrest, the district court did not plainly err in concluding that the prior criminal conduct was inextricably related to the charged conspiracy, and that Rule 404(b) therefore did not apply. See United States v. Ramsdale, 61 F.3d 825, 829–30 (11th Cir. 1995) (holding that Rule 404(b) did not apply to evidence relating to a stop where drugs were uncovered, during the time frame of the conspiracy to distribute methamphetamine as charged, because that evidence was both inextricably intertwined with the charged offense and necessary to complete the story of the defendant's role).

Even where Rule 404(b) does not apply, the evidence still must satisfy the requirements of Federal Rule of Evidence 403. Edouard, 485 F.3d at 1344. Similarity between the prior conduct and the charged conduct will make the other offense highly probative of a defendant's criminal intent in the charged offense. United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005). Here, the evidence of the prior drug trafficking was highly relevant to the government's case and very similar to the charged conduct. Thus, we also conclude that the district court did not plainly err in determining that the evidence was not prohibited by Rule 403. See id.

IV.

Aybar next argues that the district court abused its discretion in admitting co-conspirators' out-of-court statements without assessing their admissibility under hearsay rules. As a general matter, hearsay is inadmissible in federal trials, subject to a number of exceptions. Fed. R. Evid. 801(c), 802. However, if a "statement is offered against a party and is . . . [made] by a coconspirator of a party during the course and in furtherance of the conspiracy," it is not considered hearsay. Fed. R. Evid. 801(d)(2)(E). Aybar appears to argue that the district court erred in admitting his co-conspirators out-of-court statements without determining whether those statements were "during the course and in furtherance of the conspiracy," and therefore inadmissible hearsay. However, Aybar did not object to the challenged testimony at trial, so we review the admission of this evidence only for plain error. Jernigan, 341 F.3d at 1289. With respect to hearsay statements reviewed under the plain error standard, however, we are "unwilling to say that a trial court's failure to *sua sponte* redact a defendant's statement to remove hearsay is error." United States v. Campbell, 223 F.3d 1286, 1288 (11th Cir. 2000). Thus, we conclude that the district court did not plainly err by admitting alleged hearsay statements to which Aybar did not object. See id.

9

V.

Aybar also argues that the district court abused its discretion in denying his motion for substitute counsel. "Where, as here, the district court conducts an inquiry into the merits of a criminal defendant's motion for new counsel, we review the district judge's ruling for abuse of discretion." United States v. Calderon, 127 F.3d 1314, 1343 (11th Cir. 1997). Indigent criminal defendants ordinarily "must either accept the counsel appointed to represent them or represent themselves." United States v. Garey, 540 F.3d 1253, 1263–64 (11th Cir. 2008) (en banc). However, upon a showing of good cause, an indigent defendant may receive substitute appointed counsel. Id. at 1263. "Good cause in this context means a fundamental problem, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." Id. (quotation marks omitted). "Good cause for substitution of counsel cannot be determined solely according to the subjective standard of what the defendant perceives." Thomas v. Wainwright, 767 F.2d 738, 742 (11th Cir. 1985) (quotation marks omitted). Thus, "[a] defendant's general loss of confidence or trust in his counsel, standing alone, is not sufficient." Id. Instead, when reviewing a district court's ruling on a motion for substitute court-appointed counsel, we consider as especially relevant: "[1] the timeliness of the

motion; [2] the adequacy of the court's inquiry into merits of the motion; and [3] whether the conflict was so great that it resulted in a total lack of communication between the defendant and his counsel thereby preventing an adequate defense." Calderon, 127 F.3d at 1343.

About a week prior to sentencing, Aybar moved for substitute counsel. During the sentencing hearing, the district court inquired into Aybar's motion for substitute counsel. The court concluded that Aybar's counsel was able and willing to represent him effectively at the sentencing proceeding. The court's inquiry into Aybar's motion revealed that Aybar apparently became dissatisfied with his counsel's performance only upon learning of the United States Sentencing Guidelines calculation contained in the presentence report ("PSR"). The record of the sentencing hearing thus does not reflect a "conflict . . . so great that it resulted in a total lack of communication between the defendant and his counsel thereby preventing an adequate defense." Id. Instead, that record reflects Aybar's own unwillingness to communicate any concerns regarding the PSR to his counsel. Because Aybar's "general loss of confidence or trust in his counsel, standing alone, is not sufficient" to establish good cause for substitution of court-appointed counsel, we conclude that the district court did not abuse its discretion in denying Aybar's motion to substitute counsel. Thomas, 767 F.2d at 742; see also

11

Calderon, 127 F.3d at 1343 (holding that a total breakdown in communication did not occur where the defendant's accusations showed that he was merely displeased with counsel, and counsel attested that he did not take these accusations personally and could effectively argue sentencing issues).

VI.

Finally, Aybar argues that his sentence was unreasonable. Where appropriate, we review a final sentence imposed by the district court for "reasonableness." United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008). Ordinarily, we examine a defendant's sentence for both procedural and substantive reasonableness under an abuse of discretion standard, taking into account the totality of the circumstances. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The party challenging the sentence carries the burden of establishing unreasonableness. Gonzalez, 550 F.3d at 1324. Aybar did not object to the reasonableness of his sentence, however, so we review this issue only for plain error. See United States v. Bonilla, 579 F.3d 1233, 1238 (11th Cir. 2009).[4]

---

[4] Aybar argues that plain error review should not apply, because the district court failed to elicit objections to the sentence. The record of the sentencing hearing flatly refutes this claim, as the district court asked if either side had "an objection to the sentence or manner of its announcement." Aybar's counsel responded: "No, your honor."

12

Aybar appears to argue that his sentence was procedurally unreasonable because his guideline calculation should have been reduced on the basis of his "minimal role in the offense." A sentence is procedurally unreasonable if the district court improperly calculates the guideline range. United States v. Livesay, 525 F.3d 1081, 1091 (11th Cir. 2008). The guidelines provide for a four-level reduction if the defendant was a "minimal" participant, and a two-level reduction if the defendant was a "minor" participant. U.S.S.G. § 3B1.2(b). A minor participant is someone "who is less culpable than most other participants." Id. cmt. n.5. "The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." United States v. Docampo, 573 F.3d 1091, 1099 (11th Cir. 2009). The record reveals that the district court determined that Aybar was more culpable than two of his co-conspirators, but less culpable than one of them, and the court attempted to sentence Aybar to a term of imprisonment that reflected his culpability relative to that of his co-conspirators. The district court did not plainly err in refusing to reduce the guideline range sua sponte based solely on the fact that Aybar was not the most culpable member of the conspiracy. See id.

13

Aybar also appears to argue that his sentence is substantively unreasonable because it did not fully account for his "lack of criminal history and medical situation," and because his sentence was ultimately much longer than his co-conspirators' sentences. A sentence is substantively unreasonable "if it does not achieve the purposes of sentencing stated in [18 U.S.C.] § 3553(a)." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation marks omitted). We defer to the district court's judgment regarding the weight given to each § 3553(a) factor, unless the district court has made "a clear error of judgment" under the facts of a particular case. Gonzalez, 550 F.3d at 1324 (quotation marks omitted). Aybar received a 131-month sentence, which represented a downward variance from his applicable guideline range of 151 to 188 months imprisonment. The district court explained that it imposed the below-guideline sentence because of Aybar's deteriorating physical condition, and his relative culpability compared to his convicted co-conspirators. As such, we find no merit in Aybar's arguments that the district court plainly erred in imposing a below-guideline sentence, particularly given that the court expressly took into account the same

considerations Aybar advances in this appeal.[5] We conclude that the district court did not plainly err in sentencing Aybar to 131 months imprisonment.

For all of these reasons, Aybar's conviction and sentence are AFFIRMED.

**AFFIRMED.**

---

[5] At the time of Aybar's sentencing, Reynoldo Lopez, the co-conspirator that the district court in this case found most culpable, had been sentenced to 151 months imprisonment by a different district judge. However, shortly after Aybar's sentencing, the government moved under Federal Rule of Criminal Procedure 35 to reduce the sentences of two of Aybar's co-conspirators, including Lopez, in part, because they testified against Aybar. As a result, the other district judge reduced Lopez's sentence to 70 months. While this development certainly frustrated the attempt by the district court in this case to sentence Aybar in a way that reflected his culpability relative to Lopez and the other co-conspirators, we cannot say that the district court plainly erred in failing to vary more extensively downward from the guideline range in order to account for a different district judge's later reduction of the co-conspirators' sentences under Rule 35.